UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER COCCARO, | : | CIVIL ACTION NO. 3:03CV914 (DJS) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| AT&T CORPORATION, | : | |
| | : | |
| Defendant. | : | MARCH 26, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This action arises out of AT&T Corporation's decision to terminate the plaintiff's employment after six months because of his unsatisfactory job performance as a telecommunications salesperson. The plaintiff, Peter Coccaro, alleges that AT&T terminated him because of his age in violation of both the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60. *et seq.* ("CFEPA"). The undisputed record shows, however, that:

- the plaintiff made just one small sale during his six months of employment;
- the plaintiff's supervisor provided clear and objective targets for the plaintiff to meet, but the plaintiff failed to meet each one; and
- the plaintiff's coworkers were treated similarly, regardless of age, when their sales did not meet expectations.

In short, the plaintiff has no evidence that his age motivated the decision to terminate his employment. Accordingly, the plaintiff's age discrimination claims fail as a matter of law, and AT&T is entitled to summary judgment on both of the plaintiff's claims.

## I.   FACTUAL BACKGROUND[1]

### *AT&T Hires Plaintiff at Age 58*

On June 25, 2001, AT&T hired the plaintiff, who was then 58 years old, as an Account Executive-Voice in AT&T's Business Services Organization in Norwalk, Connecticut. (Exhibit A, Complaint, ¶ 9; Exhibit B, Answer, ¶ 9). The plaintiff, born November 3, 1942, held that position until January 10, 2002. (Exhibit A, Complaint, ¶ 26). As an account executive, the plaintiff's primary responsibility was to increase AT&T's revenue through sales to businesses in a specific territory of AT&T "voice" products, such as local telephone service, long distances service, calling cards, and teleconferencing. (Deposition of Peter Coccaro (hereinafter "Coccaro Dep.") at 56).[2]

John Swarts hired the plaintiff and was his manager until mid-September 2001, when Joseph LaCroce assumed responsibility for managing the plaintiff and the other seven account executives in AT&T's Norwalk office. (Coccaro Dep. at 78). In September, shortly after the plaintiff had completed training, AT&T instructed the plaintiff to assume responsibility for Virginia Trinque's module[3] of accounts, because Trinque was on extended sick leave. (Coccaro Dep. at 80-81, 238). The plaintiff testified that Trinque "notified everyone to notify that I would be fully in for her," and that she provided her module contacts with the plaintiff's phone number. (Coccaro Dep. at 81). The plaintiff treated the module as his own, and tried to book business

---

[1] For purposes of this motion only, the factual allegations in the plaintiff's complaint are presumed to be true.

[2] Excerpts from the deposition of Peter Coccaro are attached hereto as Exhibit C.

[3] A "module" is a group of base accounts that is sometimes, though not always, given to new account executives after initial training. (Coccaro Dep. at 76-77; LaCroce Dep. at 42). (Excerpts from the deposition of Joseph LaCroce are attached hereto as Exhibit D.) Account executives use their module of accounts to make sales and to identify additional sales opportunities. (Coccaro Dep. at 86, 182.)

from Trinque's accounts.  (Coccaro Dep. at 126-27, 134).   To monitor the plaintiff's work on the module, in an October 23, 2001 e-mail, LaCroce asked the plaintiff: "[w]hat accounts have you penetrated since you have taken over Virginia's module." (Exhibit E, Coccaro Deposition Exhibit (hereinafter "Dep. Exh.") 5).

### *Plaintiff Fails to Meet All Sales Targets*

The plaintiff's sales results were unsatisfactory virtually from the start.  (Coccaro Dep. at 123).  On October 26, 2001, LaCroce met with plaintiff regarding his lack of sales performance and identified areas in which his performance needed to improve.  (Coccaro Dep. at 123-25). During this meeting, LaCroce and the plaintiff developed an informal "action plan" for the plaintiff to improve his job performance.  (Coccaro Dep. at 125-126; Exhibit F, Coccaro Dep. Exh. 6). This plan called for the plaintiff to meet his quota, to increase the number of proposals made to potential customers, to place all proposals in to the "funnel"[4] for review, and to set up face-to-face visits (or "premise visits") with existing customers in an effort to identify other sales opportunities. (Exhibit F, Coccaro Dep. Exh. 6).

Approximately two weeks later, seeing no improvement at all in the designated areas, LaCroce met with the plaintiff again and placed him on a Level A Performance Improvement Plan ("PIP").  (Exhibit G, Coccaro Dep. Exh. 7).  In the PIP, LaCroce identified three particular deficiencies requiring improvement.  (Exhibit G, Coccaro Dep. Exh. 7).  Specifically, LaCroce noted that the plaintiff had failed to: 1) close a single sale during his time at AT&T; 2) identify and enter a sufficient number of opportunities into his funnel; and 3) maintain a minimally

---

[4] The "funnel" is essentially a database which contains a list of prospective customers identified by an account executive, with corresponding dollar amounts estimating the sales potential of each listed customer.  The number and dollar value of prospects then shrinks as time passes and customers are less likely to purchase AT&T services.  The funnel is maintained so that

acceptable number of weekly contacts or premise visits to customers. (Exhibit G, Coccaro Dep. Exh. 7). The plaintiff did not at the time, nor has he since, disputed the veracity of LaCroce's observations about his sales performance and activities in the first PIP. (Coccaro Dep. at 136-38).

LaCroce gave the plaintiff 30 days to meet the requirements of the Level A PIP. (Coccaro Dep. at 142-143; Exhibit G, Coccaro Dep. Exh. 7). Consistent with general AT&T policies, if his performance did not improve, at the end of thirty days, the plaintiff would be placed on a Level B PIP. (Coccaro Dep. at 142-143; Exhibit G, Coccaro Dep. Exh. 7). As LaCroce explained to the plaintiff, the standard terms of a Level B PIP would require that the plaintiff either: 1) accept a 30-day job search period, at the end of which his employment would be terminated if he had not by then secured another position; or 2) accept another 30-day PIP, at the end of which his employment would be terminated unless he succeeded in meeting minimally satisfactory standards. (Coccaro Dep. at 142-143).

Over the course of the first PIP, the plaintiff made only $2,400 worth of proposals, which fell short of the $18,000 minimum standard. (Exhibit H, Detailed Observations on Performance, hereinafter "Detailed Observations"). Also, the plaintiff made just one sale totaling only $1,000, which was $5,000 short of his goal. (Exhibit H, Detailed Observations). By the plaintiff's own admission, in his more than six months of employment at AT&T, he made only one sale. (Coccaro Dep. at 95).

Because the plaintiff had failed even to approach the goals set out in the Level A PIP, LaCroce placed him on the Level B PIP. (Exhibit H, Detailed Observations; Exhibit I, Coccaro

---

an account executive will have enough potential prospects identified such that selling to a small percentage of these prospects results in meeting quota. (Coccaro Dep. at 90-94.)

Dep. Exh. 8). LaCroce met with the plaintiff on December 10 to again explain to him his options under the Level B PIP. (Coccaro Dep. at 146). At that time, the plaintiff opted to accept the 30-day job search, at the end of which AT&T would terminate his employment if he had not yet secured another position. (Exhibit I, Coccaro Dep. Exh. 8).

### *AT&T Also Addresses Lack of Sales By Plaintiff's Younger Co-Workers*

Other employees in the plaintiff's division who were younger than the plaintiff were similarly treated with regard to unsatisfactory sales performance. (LaCroce Dep. at 143, 157). For example, AT&T placed John Cibulay, age 44, on several written warnings due to his inadequate performance. (Exhibit J, Action Plans for John Cibulay, hereinafter "Action Plans"). In fact, AT&T placed Cibulay on three sequential PIPs. (Exhibit J, Action Plans; LaCroce Dep. at 143). AT&T afforded Cibulay multiple opportunities to improve his performance both because he had been with the company more than six months,[5] and because at times he was able to meet certain minimum sales targets. (LaCroce Dep. at 143-144). Cibulay's inability to sustain adequate sales performance, however, ultimately led to AT&T's decision to terminate his employment. (LaCroce Dep. at 142-43).

### *Plaintiff Does Not Allege Any Age-Based Remarks*

The plaintiff has never maintained that LaCroce or any other AT&T employee made any remarks about the plaintiff's or any other employee's age, nor that any AT&T employee ever stated or implied that age was the reason for his termination or poor performance reviews. (Coccaro Dep. at 160).

---

[5] Pursuant to AT&T's general policy, individuals employed by AT&T for more than six months may be put on action plans rather than PIPs. AT&T employees holding their jobs for less than that amount of time go directly to a Level A PIP. (Exhibit K, AT&T Performance Improvement Policy).

II.   ARGUMENT

    A.   **Summary Judgment Standard**

The Federal Rules of Civil Procedure provide that a party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U. S. 317, 324-25 (1986); Kuchy v. Connecticut State Employees' Retirement Comm'n, No. 3:93CV01352, 1994 U.S. Dist. LEXIS 15608, at *10-*11 (D. Conn. Aug. 18, 1994).[6]  Accordingly, AT&T is entitled to summary judgment unless the plaintiff can set forth specific facts, supported by admissible evidence, showing that there is a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(e); Lujan v. National Wildlife Fed'n, 497 U.S. 871, 883-85 (1990).

"Properly used, summary judgment permits a court to streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation."  Knight v. United States Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) (citation omitted).  The United States Supreme Court has observed that summary judgment is not a disfavored procedural shortcut.  Rather, it is "an _integral_ _part_ of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp., 477 U.S. at 327 (emphasis added) (citations omitted).

The mere existence of alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; "the requirement is that there be no _genuine_ issue of _material_ fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A "genuine" dispute over a material fact arises when the plaintiff produces "concrete evidence from which a reasonable juror can return a verdict in his favor."  Anderson, 477 U.S. at 256.  A

---

[6] This and all other unpublished cases cited herein are attached as Exhibit L.

scintilla of evidence in support of the plaintiff's position is insufficient; there must be evidence from which a jury reasonably could find for him. See Anderson, 477 U.S. at 252. The party opposing the motion must demonstrate that a genuine dispute over material facts actually exists. The opposing party cannot solely rely on its pleadings, conclusory statements, or on the "mere hope" that discovery proceedings or a trial will disclose further evidence. Gray v. Town of Darien, 927 F.2d 69, 74 (2d Cir. 1991). Instead, the opposing party must present specific evidence supporting its contention that there is a genuine material issue of fact. Ellis v. Provident Life & Accident Ins. Co., No. 91CV7074, 1995 U.S. Dist. LEXIS 10720, at *9 (S.D.N.Y. July 31, 1995) (citation omitted).

The Second Circuit has stated that "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 465 (2d Cir. 2001). Indeed, summary judgment is appropriate even where "elusive concepts such as motive or intent are involved." See Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). The Second Circuit has held that "the salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1984), cert. denied, 474 U.S. 829 (1985).

Pursuant to Rule 56(e), the plaintiff may not rest on "mere allegations" but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Thus, the plaintiff cannot defeat a motion for summary judgment "by offering purely conclusory allegations of discrimination, absent any concrete particulars. . . ." Meiri, 759 F.2d at 998. To allow a claimant to do so would necessitate a trial in all discrimination cases. See id.

B. **The Plaintiff Cannot Overcome Summary Judgment on His Age Discrimination Claim**

The Second Circuit consistently uses the McDonnell-Douglas analytical framework for evaluating claims of age discrimination under the ADEA.[7]  See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)); Walsh v. United Cable Tech Servs. Corp., No. 99-7764, 1999 U.S. App. LEXIS 34238, at *2-3 (2d Cir. Dec. 20, 1999).  Pursuant to this analytical framework, the plaintiff has the initial burden of establishing a prima facie case.  See Schnabel, 232 F.3d at 87.  To do so, the plaintiff must demonstrate that:

> (1) he was within the protected age group, (2) he was qualified for the position, (3) he was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of age discrimination.

Schnabel, 232 F.3d at 87.  If the plaintiff establishes a prima facie case, "the defendant must proffer a legitimate, non-discriminatory business reason for the employment action."  Walsh, 1999 U.S. App. LEXIS 34238, at *2.  "To rebut a prima facie case the defendants need only 'produce enough admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.'"  Graham v. Texasgulf, Inc., 662 F. Supp. 1451, 1460 (D. Conn. 1987) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981)).

---

[7] The plaintiff has also brought a state age discrimination claim under CFEPA.  See Conn. Gen. Stat. § 46a-60 (2003).  It is a well established principle that Connecticut courts look to federal law to interpret the state's antidiscrimination statute.  See, e.g., Levy v. Commission on Human Rights and Opportunities, 236 Conn. 96, 103, 671 A.2d 349 (1996).  Thus this memorandum, through its analysis of federal law, will address both the plaintiff's state and federal discrimination claims.  See Burbank v. Office of the Attorney General of the State of Connecticut, 240 F. Supp. 2d 167, 175 (D. Conn. 2003)(indicating that analysis of plaintiff's CFEPA claim would be unnecessarily repetitive of the court's ADEA analysis).

Once AT&T articulates an age-neutral reason, "the plaintiff then has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination." Grey v. City of Norwalk Bd. of Educ., No. 3:00-cv-2033, 2004 U.S. Dist. LEXIS 1561, at *10 (D. Conn. Feb. 4, 2004) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). "[A] court must decide whether the plaintiff introduced enough evidence—either at the prima facie case level, by demonstrating pretext, or by evidence in addition to these—that considering the sum of all evidence, reasonable people could find that discrimination existed." Hutchinson v. Weiss, Peck and Greer, L.L.C., No. 00-7351, 2000 U.S. App. LEXIS 31863, at *5 (2d Cir. Dec. 13, 2000) (quoting Schnabel, 232 F.3d at 87).

Here, the plaintiff's age discrimination claims rest principally on the allegation that, because of his age, he was treated differently than other younger, similarly situated AT&T employees. As discussed more fully below, his claims have no merit.

### 1. The Plaintiff Has Failed to Establish a Prima Facie Case Because He Cannot Show That His Termination Was Motivated By His Age.

The plaintiff cannot establish a prima facie case of age discrimination because he has not provided sufficient evidence to show that his termination "occurred under circumstances giving rise to an inference of age discrimination."[8] Schnabel, 232 F.3d at 87 (citing McDonnell-Douglas, 411 U.S. at 802-04). Indeed, the circumstances of his termination reflect that the plaintiff's placement on a PIP and his ultimate termination came as the direct result of his undisputed unsatisfactory job performance: he failed to meet any of his sales or related targets, making only one small sale in six months of employment with AT&T. (Coccaro Dep. at 95). Moreover, the plaintiff has produced no evidence that AT&T applied a different standard of performance for him

---

[8] AT&T assumes for the purposes of this motion, but does not concede, that the plaintiff can establish the first three elements of the prima facie case of age discrimination.

than it did for other employees; in other words, there is no evidence that similarly low sales were tolerated in other, younger employees. In fact, it is beyond dispute that all employees with unsatisfactory sales performance were placed on formal action plans or PIPs. (LaCroce Dep. at 106). Finally, the plaintiff has no evidence of any comments or statements made by anyone at AT&T that would tend to show discriminatory animus on the part of AT&T. (Coccaro Dep. at 170).

2. AT&T Has Established That It Had a Non-Discriminatory Business Rationale for Its Actions.

Even if the court should determine that the plaintiff has established a prima facie case of age discrimination, AT&T easily meets its burden of production by identifying its reason for terminating the plaintiff's employment: the plaintiff's unsatisfactory job performance, which is indisputable in the face of ample documentation of plaintiff's failure to meet any sales or related targets in his six months of employment. Most notably, as the plaintiff himself acknowledges, during his entire tenure as an account executive at AT&T, he made only one small sale—and he made that sale on the very day he was scheduled to meet with LaCroce to determine his options under the Level B PIP. (Coccaro Dep. at 95-96; Exhibit H, Detailed Observations). Moreover, this single sale still left him $5,000 short of his $6,000 quota. (Coccaro Dep. at 146; Exhibit H, Detailed Observations).

The undisputed evidence reveals other measures of the plaintiff's inability to adequately perform his job. (Exhibit H, Detailed Observations). For example, the plaintiff had made only $2,400 worth of proposals, $15,600 short of meeting of AT&T's minimum standard. (Coccaro Dep. at 144, 146; Exhibit H, Detailed Observations). Further, the plaintiff failed to make a

minimally acceptable number of weekly contacts or premise visits, which generally lead to sales opportunities.  (Coccaro Dep. at 146; Exhibit H, Detailed Observations).

AT&T thus has met its burden of production.  See, e.g., Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 317 (2d Cir. 1999) (holding that the defendant-employer "met its burden of production to proffer a legitimate non-discriminatory reason" by showing that the employee's "performance was inadequate"); Young v. Bank of Boston, No. 3:93CV1642, 1995 U.S. Dist. LEXIS 22075, at *10 (D. Conn. Mar. 31, 1995) (holding that "[a]n employee's work performance is a legitimate consideration, and on its face may be treated as the articulation of a legitimate, non-discriminatory reason").

        3.      The Plaintiff Has Failed To Establish That AT&T's Legitimate, Non-Discriminatory Reasons For Its Employment Decision Are Pretextual.

In the face of his indisputably unsatisfactory performance, plaintiff cannot prove that "age was the real reason for his discharge."  Hutchinson, 2000 U.S. App. LEXIS 31863, at *5.  He cannot prove that younger employees with similarly poor work performances were retained.  See Logan v. St. Luke's-Roosevelt Hospital Center, 636 F. Supp. 226, 234 (S.D.N.Y 1986).  Nor can he prove—and indeed he has not alleged—that anyone at AT&T ever made any direct or indirect comments regarding his age.  See Lopez v. S.B. Thomas, 831 F.2d 1184, 1189 (2d Cir. 1987); Woroski v. Nashua Corp., 31 F.3d 105, 109 (2d Cir. 1994).  Accordingly, the plaintiff has failed to establish that AT&T's proffered reasons for terminating the plaintiff's employment were a pretext for discrimination.  See Logan, 636 F. Supp. at 234.

Rather, in the absence of any such proof, the plaintiff relies principally on his assumption that John Cibulay, a younger, similarly situated employee at AT&T, was not disciplined and was retained by AT&T.  (Complaint, ¶ 23).  Specifically, he contends that Cibulay "was not

reprimanded or placed on a PIP" despite his low sales totals and other indicia of inadequate job performance. (Exhibit A, Complaint, ¶ 23).  However, indisputable evidence indicates that AT&T *did* place Cibulay on a formal action plan, did place Cibulay on three PIPs during his time at AT&T, and did ultimately terminate Cibulay's employment because of his unsatisfactory performance.  (Exhibit J, Action Plans; LaCroce Dep. at 143).  Cibulay, who had been with AT&T for more than six months,  was subject to a slightly different policy than plaintiff; employees with less than six months' service went directly to a Level A PIP in the event of unsatisfactory performance, whereas longer term employees could be placed on an action plan first. (Exhibit K, AT&T Performance Improvement Policy).  Plaintiff makes no suggestion—nor could he—that this broadly applicable, age-neutral policy was applied inconsistently or in an age-biased manner.

      The complaint also alleges that a younger employee filled the plaintiff's position after his termination.  (Exhibit A, Complaint, ¶ 27).  The undisputed facts indicate that this is also inaccurate.  Rather, LaCroce arranged for Hugh Sullivan, a four-year AT&T employee with sales experience, to transfer into LaCroce's group effective December 23, 2001 to fill one of the two openings on the sales team that existed *while the plaintiff was still employed by AT&T*.  (LaCroce Dep. at 153-55).  Even if the court were to find that Sullivan could be viewed as the plaintiff's replacement, there is no evidence indicating that AT&T replaced the plaintiff with Sullivan because of his younger age.  See Soderberg v. Gunther Int'l, Ltd., No. 3:02cv2010, 2004 U.S. Dist. LEXIS 292 (D. Conn., Jan. 5, 2004) (noting that plaintiff could not prove pretext in part because there was "no evidence that Defendant considered age when deciding to…eventually hire [plaintiff's] replacement.").   In any case, mere replacement by a younger person, standing alone, is not enough to support a rational inference of discriminatory animus or pretext.  See Strohmeyer

v. International Brotherhood of Painters & Allied Trades, 989 F. Supp. 455, 460 (W.D.N.Y. 1997) (stating that "[r]eplacement by a younger individual…does not, standing alone, indicate that defendant's proffered reasons for terminating plaintiff are pretextual"). Accordingly, the plaintiff's allegation that he suffered age discrimination based on the fact that a younger employee replaced him is meritless.

Finally, the plaintiff alleges that he was not given a sales module and that this fact is evidence that AT&T discriminated against him. (Exhibit A, Complaint, ¶ 15). However, the plaintiff himself concedes that he treated Trinque's module as his own, primarily by using the module to try to make sales. (Coccaro Dep. at 126-127). Further, the plaintiff admits that Trinque gave the plaintiff's number to her contacts and notified them that the plaintiff would be "fully in for her." (Coccaro Dep. at 81). Additionally, the plaintiff acknowledges that LaCroce said that he would transfer Trinque's module to the plaintiff. (Coccaro Dep. at 238). Finally, in an October 23, 2001 e-mail sent to the plaintiff, LaCroce referenced the plaintiff having "taken over Virginia's module." (Exhibit E, Coccaro Dep. Exh. 5). It is thus apparent that the plaintiff had responsibility for Trinque's module. The plaintiff's suggestion that he was not formally assigned to that module—even if it were true—is a distinction without a difference.

Even if AT&T had given the plaintiff *no* responsibility for *any* accounts, however, this fact could not rationally indicate a pretext for discrimination. See Lanahan v. Mutual Life Ins. Co. of New York, No. 98-9174, 1999 U.S. App. LEXIS 9695, at *4 (2d Cir. May 17, 1999) (stating that "unrealistic goals…and general lack of management support" do not alone "point to age discrimination as the true reason for discharge."). Here, the plaintiff himself acknowledges that all other account executives received their own modules, even those who were over 40 and close in

age to the plaintiff. (Exhibit A, Complaint, ¶ 15). There is no suggestion, much less any evidence, that plaintiff's age had any bearing on module assignment.

In light of the above, the plaintiff has provided no evidence that AT&T's legitimate business reason for his termination was pretextual. Accordingly, there is no basis for a rational inference of age discrimination on the undisputed facts in this record.

## IV. CONCLUSION

For all the foregoing reasons, AT&T respectfully seeks entry of summary judgment on the plaintiff's state and federal age discrimination claims.

> DEFENDANT,
> AT&T CORPORATION
>
>
> By_____
> Victoria Woodin Chavey (ct14242)
> Stacy Smith Walsh (ct25252)
> Day, Berry & Howard LLP
> CityPlace I
> Hartford, Connecticut 06103-3499
> (860) 275-0100
> (860) 275-0343 (fax)
> *vwchavey@dbh.com*
> *sswalsh@dbh.com*
> Its Attorneys

## **CERTIFICATION**

      THIS IS TO CERTIFY that a copy of the foregoing was mailed this date via first-class mail to:

Robert A. Richardson, Esq.
Garrison, Levin-Epstein, Chimes
   & Richardson
405 Orange Street
New Haven, CT 06511

                                    _____
                                            Stacy Smith Walsh