UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENDACE ABRAM, PETER COCCARO, SR., | CIVIL ACTION NO.: |
| Plaintiff, | 3:03 CV 914 (DJS) |
| vs. | |
| AT&T CORPORATION, | |
| Defendant. | September 8, 2003 |

## REVISED COMPLAINT

**I.     PRELIMINARY STATEMENT**

1.     The plaintiff, Peter Coccaro, brings this action against his former employer, AT&T Corporation (AT&T), alleging that his age was a motivating factor in his termination of employment, in violation of the federal Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.*, (hereinafter referred to as the ADEA), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46a-60 *et. seq.* (hereinafter referred to as the "FEPA").

**II.    JURISDICTION AND VENUE**

2.     This Court has jurisdiction over this dispute pursuant to Section 7(b) of the ADEA, 29 U.S.C. §626(b), 28 U.S.C. § 1331, 28 U.S.C. § 1343(3). The plaintiff also requests this Court to exercise supplemental jurisdiction over his state law claim, pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper within this district, pursuant to 28 U.S.C. §1391(b)(1) and (2), because the defendant is located in Connecticut and the unlawful employment practices alleged herein occurred, in whole or in part, in Connecticut.

### III. PARTIES

4. Plaintiff Peter Coccaro, Sr. ("Coccaro") is a resident of the State of Connecticut. Plaintiff is a former employee of AT&T and is over the age of forty.

5. Defendant AT&T Corporation is a company which has its corporate headquarters in Basking Ridge, New Jersey 07920. Defendant is a telecommunications company in the business of providing telephony and related services in all fifty states (including Connecticut) and abroad. AT&T maintains centralized corporate offices in the State of New Jersey where, upon information and belief, employment decisions are made and records of those decisions are kept.

### IV. JURISDICTIONAL PREREQUISITES

6. On February 1, 2002, plaintiff Peter Coccaro, Sr. ("Coccaro") filed a timely charge of discrimination with the federal EEOC. Plaintiff received an EEOC right to sue letter, dated August 30, 2002.

7. Plaintiff filed his federal court complaint within 90 days of the date he received his right to sue letter.

### V. FACTS

8. Plaintiff was born on November 3, 1942.

9. Plaintiff commenced employment with the defendant company on June 25, 2001 as a Voice Account Manager in defendant's Growth Markets Department in Norwalk, Connecticut.

10. At the time of his hire, plaintiff reported to John Swarts, a sales manager.

11. Throughout his employment with the defendant company, plaintiff performed his job responsibilities in at least a satisfactory manner.

12. Approximately two months into his employment, John Swarts was replaced and plaintiff began reporting to a different sales manager, Joe LaCroce ("LaCroce"). LaCroce was in his mid-thirties at the time.

13. LaCroce was not involved in the initial decision to hire the plaintiff.

14. During his employment with the defendant company, plaintiff was subjected to disparate treatment based on his age.

15. Though plaintiff excelled in defendant's initial job training program for all new Voice Account Managers, he was not provided any base accounts (also known as a "module") after completing the training program. In contrast, plaintiff's younger, similarly situated co-workers were provided with base accounts both before and after completion of the training program.

16. When plaintiff complained to LaCroce that he was not receiving any base accounts (a module), LaCroce warned him that there are "a lot of other people in the market," implying that plaintiff's complaints could result in his termination.

17. Plaintiff also had a discussion with Erin Cruschel ("Cruschel") regarding defendant's failure or refusal to provide him with base accounts (a module). Cruschel, who was a Human Resources Representative in her mid-twenties, seemed uninterested in investigating his complaint or allegation.

18. Plaintiff could not afford to lose his job and feared retaliation if he pursued his complaints any further. Based on the comments of LaCroce, plaintiff was afraid to make any further complaints about the discrimination he experienced due to his age.

19. Plaintiff was never given his own accounts but he was given the accounts of some of his younger colleagues to manage in their absence. For example, when Virginia Trinque ("Trinque"), a co-worker in her late thirties, was forced to take a leave of absence, plaintiff had to take on her accounts.

20. When trying to determine if Trinque's accounts were to be considered plaintiff's accounts, defendant did not provide him with an answer. When plaintiff checked the Data System, he observed that his name had been assigned to the bad accounts he had taken over and Trinque's name was assigned to all profitable accounts.

21. Plaintiff was not given any credit for the work he did on his co-workers' accounts. Such work detrimentally impacted plaintiff's ability to make quota, as a substantial amount of his time was spent servicing others' accounts, while not being assigned any of his own.

22. Without the recognition for his added responsibilities, much of plaintiff's work was both overlooked and unrecorded by defendant. Although plaintiff attempted to receive recognition for his work on the other accounts, his efforts were unsuccessful.

23. Though plaintiff was told that he had several months to ramp up to 100% of his quota, soon after his training was complete, he was reprimanded for failing to follow rules (i.e., not achieving 100% of quota) and was placed on a Performance Improvement Plan ("PIP"). In contrast, younger employees, such as John Cibulay ("Cibulay") a co-worker approximately thirty-

five years old, had similarly failed to achieve quota over the same or longer time periods but were not reprimanded or placed on a PIP.

24. Upon information and belief, the defendant uses PIPs as a pretext to create a paper trail to remove older employees. Older employees who are placed on these plans are often top performers who, prior to being targeted for termination, were rated on defendant's evaluations as employees who "exceed expectations."

25. PIPs are supposed to be based on coaching and set reasonable goals for the employee to achieve. Instead, upon information and belief, standards are set so high that they are impossible to achieve.

26. On January 10, 2002, plaintiff was terminated by LaCroce for alleged poor performance.

27. Shortly after he terminated plaintiff, LaCroce placed Hugh Sullivan ("Sullivan"), an employee in his mid-thirties, in plaintiff's vacant position.

28. As a direct result of the discriminatory and retaliatory actions taken by defendant, plaintiff sought the assistance of a counselor, during November and December 2001, complaining of dizziness that was related to the discrimination he was encountering. Plaintiff continues to suffer from stress and anxiety as a result of the discrimination and retaliation he suffered while employed with AT&T.

VI. **COUNT I - Age Discrimination in Violation of 29 U.S.C. § 621 *et seq.***

29. Plaintiff's age was a motivating factor in defendant's decision to terminate his employment.

30. As a result of his discriminatory termination, plaintiff has suffered economic harm.

## VII. COUNT II - Willful Age Discrimination in Violation of 29 U.S.C. § 621 et. seq.

31. Paragraphs 1-28 are hereby reincorporated the same as if fully pled in this Second Count.

32. Plaintiff's age was a motivating factor in defendant's decision to terminate his employment.

33. Defendant's discriminatory termination of plaintiff's employment was done with knowledge or reckless disregard for the fact that defendant's conduct violated the ADEA.

34. As a result of defendant's conduct, plaintiff has suffered economic damages.

## VIII. COUNT III - Age Discrimination in Violation of Conn. Gen. Stat. § 46a-60 et. seq.

35. Paragraphs 1-28 are hereby reincorporated the same as if fully pled in this Third Count.

36. Plaintiff's age was a motivating factor in defendant's decision to terminate his employment.

37. As a result of defendant's discriminatory conduct, plaintiff has suffered economic and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment against defendant AT&T Corporation as follows:

1. Preliminary and permanent injunctions against AT&T and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

2. A judgment declaring that the practices complained of herein are unlawful and violative of 29 U.S.C. § 621;

3. All damages which plaintiff has sustained as a result of AT&T's discriminatory conduct, including back pay, front pay, and for emotional distress, humiliation, embarrassment, and anguish;

4. Reinstatement or front pay, in lieu thereof;

5. Liquidated damages under Count II;

6. Exemplary and punitive damages in an amount commensurate with AT&T's ability and so as to deter future conduct under Count III;

7. Awarding plaintiff his costs and reasonable attorneys' fees, in connection with this action;

8. Pre-judgment and post-judgment interest, as provided by law; and

9. Granting plaintiff such other and further relief as this Court finds necessary and proper.

**THE PLAINTIFF,**

**PETER COCCARO**

By: _____
Robert A. Richardson *(Fed. Bar #: ct09818)*
GARRISON, LEVIN-EPSTEIN, CHIMES
& RICHARDSON, P.C.
405 Orange Street
New Haven, CT 06511
Ph: (203) 777-4425
Fax: (203) 776-3965
Rrichardson@garrisonlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. mail, postage prepaid, this 6th day of September, 2003 to:

Victoria Woodin Chavey, Esq.
**Day, Berry & Howard, LLP**
CityPlace I - 185 Asylum Street
Hartford, CT 06103-3499

_____
Robert A. Richardson