## UNPUBLISHED DECISIONS

Kuchy v. Connecticut State Employees' Retirement Comm'n, No. 3:93CV01352, 1994 U.S. Dist. LEXIS 15608 (D. Conn. Aug. 18, 1994).

Ellis v. Provident Life & Accident Ins. Co., No. 91CV7074, 1995 U.S. Dist. LEXIS 10720 (S.D.N.Y. July 31, 1995).

Walsh v. United Cable Tech Servs. Corp., No. 99-7764, 1999 U.S. App. LEXIS 34238 (2d Cir. Dec. 20, 1999).

Grey v. City of Norwalk Bd. of Educ., No. 3:00-cv-2033, 2004 U.S. Dist. LEXIS 1561 (D. Conn. Feb. 4, 2004).

Hutchinson v. Weiss, Peck and Greer, L.L.C., No. 00-7351, 2000 U.S. App. LEXIS 31863 (2d Cir. Dec. 13, 2000).

Young v. Bank of Boston, No. 3:93CV1642, 1995 U.S. Dist. LEXIS 22075 (D. Conn. Mar. 31, 1995).

Soderberg v. Gunther Int'l, Ltd., No. 3:02cv2010, 2004 U.S. Dist. LEXIS 292 (D. Conn., Jan. 5, 2004).

Lanahan v. Mutual Life Ins. Co. of New York, No. 98-9174, 1999 U.S. App. LEXIS 9695 (2d Cir. May 17, 1999).

LEXSEE 1994 U.S. DIST. LEXIS 15608

OLGA KUCHY v. CONNECTICUT STATE EMPLOYEES' RETIREMENT COMMISSION

CIVIL NO. 3:93CV01352(AVC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1994 U.S. Dist. LEXIS 15608*

**August 18, 1994, Decided
August 18, 1994, Filed**

JUDGES: [*1] Covello

OPINIONBY: ALFRED V. COVELLO

OPINION:

RULING ON THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND THE DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

This is an action for damages brought pursuant to the Age Discrimination in Employment Act (ADEA) n1 and *Conn. Gen. Stats. § § 46a-60(a)(1)*, 46a-60(b)(2), 46a-70, and 46a-71, in which the plaintiff, Olga Kuchy, alleges age discrimination in the provision of benefits by the defendant, Connecticut State Employees' Retirement Commission. The plaintiff now moves for summary judgment and the defendant cross-moves for summary judgment. n2 Both parties assert that they are entitled to summary judgment as a matter of law. The issues presented are: 1) whether the plaintiff's suit is time barred; 2) whether the 1990 amendments to the ADEA are applicable; and 3) whether the plaintiff has established a prima facie case of age discrimination. The court concludes that the action is not time barred and that the 1990 amendments to the ADEA do not apply to this action. Further, the court finds that the plaintiff has failed to establish a prima facie case of age discrimination under the ADEA and, therefore, grants the defendant's cross-motion for summary judgment.

n1 *29 U.S.C. § § 621* et seq. [*2]

n2 The defendant also moves to dismiss the action brought pursuant to the ADEA, alleging that the court lacks subject matter jurisdiction because the plaintiff lacks standing. The court concludes that the plaintiff has standing to bring this action and that the court has subject matter jurisdiction pursuant to Title *28, U.S.C. § 1331*.

Examination of the complaint, answer, affidavits, depositions, and other supporting materials disclose the following undisputed facts. The plaintiff, a permanent full-time state employee, brought this action alleging age discrimination in the provision of benefits by the defendant, retirement commission which is part of the retirement division of the office of state comptroller and is responsible for the operation and the administration of the State Employees Retirement System (SERS).

The Connecticut Pension Benefits System

In 1974 and 1975, the Connecticut Labor Relations Board issued decisions indicating that pension benefits were mandatory subjects of collective bargaining. In 1986, the state legislature passed a statute [*3] which mandated coalition bargaining on pension issues negotiated on or after July 1, 1988. The State Employee Bargaining Agent Coalition (SEBAC) then formed. On October 12, 1989, the legislature ratified SEBAC I, a collectively bargained pension agreement issued pursuant to an interest arbitration award. From July 1, 1988 through June 30, 1994, SEBAC I was in effect.

On February 24, 1992, the legislature ratified SEBAC II, an agreement negotiated between the state and SEBAC. The state and SEBAC created SEBAC II in

order to effect changes in SEBAC I, the then current pension agreement between the state and SEBAC. Under the State Employees Retirement System (SERS), there are two pension plans, called tier I and tier II. SEBAC II revised the normal and early retirement plans under tier I. The plaintiff is still a full-time state employee and an active SERS member of tier I, plan C.

SERS Retirement System

Under the normal retirement system, benefits were calculated based upon three factors: 1) the employee's age at time of retirement, 2) the number of years of state service (for which service credits were given), and 3) the employee's average annual salary based upon the three highest [*4] paid years of service. Employees aged 55 with at least 25 years of service and employees aged 65 with at least 10 years of service were eligible for normal retirement. Normal retirement benefits for tier I, plan C members was calculated by multiplying 2% by the years of service by average salary, in order to arrive at the employee's annual retirement benefit rate.

As of March 1, 1992, the plaintiff was a 71 year old permanent full-time state employee, who had 19 years and 5 months of service credit. If the plaintiff took normal retirement, she would net 39% (19.5 years of service x 2% - 39%) of her average salary, annually.

The Connecticut State Employees Retirement System (SERS) also offered a basic early retirement plan in which eligible employees may participate. In that program, the basic early retirement benefit was calculated using the same formula as for normal retirement, except the benefit factor was reduced to account for the longer expected time in which benefits would be paid. The benefit factor used for early retirement was derived from a chart (referenced as the statutory benefit calculation chart or chart). n3 Since 1977, the table and formula for producing the chart [*5] have been in effect.

> n3 In her deposition, the plaintiff admitted that she has possessed, since 1985, a booklet which contains this chart.

Under the basic early retirement plan, the benefit factor for employees aged 70 and over was 2.5%, which enabled employees aged 70 and over to receive a 50% (20 x 2.5% = 50%) annual rate after 20 years of service. Employees aged 65 to 69 accrued retirement credit at the normal retirement benefit percentage of 2% which entitled employees to a 50% (25 x 2% = 50%) annual rate after 25 years of service. Employees below the age of 65, accrued retirement credit below 2% to account for the longer period in which benefits were expected to be paid. After 25 years of service, employees below the age of 65 received a 2% benefit factor which entitled them to a 50% (25 x 2% = 50) annual rate. Pursuant the chart, no employees in any age category received more than 50% of their salary level in retirement benefits unless they worked more than 25 years.

As of March 1, 1992, under the basic early [*6] retirement system, the plaintiff would have received 48.75% (19.5 x 2.5% for employees over 70 years = 48.75%) of her average salary, annually.

Early Retirement Incentive Program

SEBAC II also created the 1991-1992 early retirement incentive program which is the subject of the action. The incentive plan allowed state employees to either: 1) add three years service credit to their length of employment; or 2) to add three years to their age to reach the minimum retirement age of 55. The early retirement incentive plan then applied the higher service credit to the statutory benefit calculation chart to determine the annual retirement benefit rate.

Part of the defendant's responsibilities included the operation and the administration of the 1991-1992 early retirement incentive program. The state and SEBAC offered the early retirement incentive program under the State Employees Retirement System (SERS). The state and SEBAC, through the incentive program, intended to accomplish a voluntary work force reduction by promoting early retirement and to effect payroll savings among the agencies of state government. Steven Weinberger, director of the retirement division, characterized the [*7] incentive plan as a fringe benefit which was added to the tier I pension system. Employees who elected to retire between November 1, 1991 and March 1, 1992 qualified for the plan. The incentive plan was voluntary and open to members of the SERS who: 1) were permanent, full-time state employees; 2) had completed at least ten years of state service prior to the date of retirement; 3) were at least 52 years old; and 4) had submitted applications for early retirement. The plaintiff met these first three requirements, though she did not submit the required applications because she chose not to participate in the early retirement incentive plan.

In order to determine the retirement benefit factor due under the early retirement incentive program, the plan used a benefit calculation chart. This chart used: 1) the employee's age at time of retirement; 2) the number of years of service (adding the service credit from the incentive plan); and 3) the employee's average annual salary based upon the three highest paid years of service. Under the early retirement incentive plan, employees

Case 3:03-cv-00914-DJS    Document 56-14    Filed 03/26/2004    Page 4 of 10

Page 3
1994 U.S. Dist. LEXIS 15608, *

between the ages of 55 and 64 utilized a benefit factor lower than 2% in order to calculate their early retirement [*8] benefit. Employees in the 65 to 69 age category utilized the normal retirement benefit percentage of 2%, while employees in the 70 and over age category, used a 2.5% benefit percentage for 20 years of service. Employees in the 70 and over age category could retire after 20 years of service with 50% (2.5% x 20 = 50%) of their average salary paid in retirement benefits. Employees under 70 needed to work at least 25 years before attaining 50% (2% x 25 = 50%) of their average salary in retirement benefits. The chart gave 0% retirement credit for the 21st through 24th years of service in the 70 and over age group. This froze benefits to a maximum of 50% of their average salary during the 21st through 24th years of service.

On or about December 23, 1991, Weinberger mailed a memorandum to all personnel and payroll officers informing them of SEBAC II, a collective bargaining agreement reached between the state and SEBAC. This memo described the early retirement incentive plan, explained the forms which needed processing prior to employees participating in the plan, and provided dates for informational workshops. Further, the defendant mailed notices describing the incentive plan to employees. [*9] In January of 1992, the plaintiff received notice from the retirement division regarding the early retirement incentive program.

In January or February of 1992, Weinberger met the plaintiff at an early retirement counseling workshop. At this time, the plaintiff had 19.5 years of service. According to Weinberger, the plaintiff showed him a work sheet wherein she computed her yearly retirement benefits as 56.25% of her average annual salary. The plaintiff determined this total by multiplying 22.5 years of service (19.5 + 3 years of incentive credit = 22.5) by a benefit factor of 2.5% (percentage for those over 70 years) for a total of 56.25%. According to Weinberger, he changed the work sheet to account for the annual retirement benefit rate's maximum of 50% and credited the plaintiff with 2.5% multiplied by 20 years for a total of 50%, with 0% retirement credit given for the additional 2.5 years.

On April 7, 1992, the plaintiff brought this action claiming that she only received an additional six months service credit, instead of an additional three years for which the incentive plan provided. The plaintiff claimed that the plan discriminated against her because employees under the [*10] age of 70 received retirement credit for their 21st through 24th years of service.

STANDARD

A motion for summary judgment is granted when there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American Int'l Group, Inc. v. London American Int'l Corp., 664 F.2d 348, 351 (2nd Cir. 1981)*. In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. In an age discrimination action, although the plaintiff carries the ultimate burden in proving the defendant's discriminatory intent, see *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)*; [*11] *St. Mary's Honor Center v. Hicks, 125 L. Ed. 2d 407, U.S. , 113 S. Ct. 2742, 2747 (1993)*, summary judgment is generally inappropriate in an ADEA action where intent and state of mind are at issue. *Montana v. First Federal Savings & Loan of Rochester, 869 F.2d 100, 103 (2nd Cir. 1989); Meiri v. Dacon, 759 F.2d 989, 998 (2nd Cir. 1985)*, cert. denied, *474 U.S. 829, 88 L. Ed. 2d 74, 106 S. Ct. 91 (1985)*. Nonetheless, "the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to commercial or other areas of litigation." *Mieri, 759 F.2d at 998*.

DISCUSSION

A. Time Bar

The defendant first asserts that the plaintiff's suit is barred by 29 U.S.C. § 626(d)(2) of the Age Discrimination in Employment Act (ADEA) which provides that an allegedly aggrieved person may not file a civil action unless she has first timely filed a charge with the Equal Employment [*12] Opportunity Commission (E.E.O.C.). 29 U.S.C. § 626(d). The defendant argues that the plaintiff does not attack the early retirement incentive plan per se, but attacks the statutory benefit calculation chart used to calculate the early retirement incentive plan. The defendant asserts that the benefit calculation chart was included in a booklet that the plaintiff received in 1985. Accordingly, the defendant argues that the plaintiff's action, filed on April 7, 1992, is time barred since she should have filed her claim in 1985 when she first became aware of this chart.

The plaintiff, in response, contends that the provisions of the early retirement incentive plan differ from those of the normal early retirement plan. The plaintiff claims that since she learned of her benefits under the early retirement incentive plan in January of 1992, her April 7, 1992 charge is not time barred.

Case 3:03-cv-00914-DJS   Document 56-14   Filed 03/26/2004   Page 5 of 10

Page 4
1994 U.S. Dist. LEXIS 15608, *

Section 626(d) of the ADEA provides that a charge must be filed:

> (2) in a case to which section 633(b) n4 of this title applies, within 300 days after the alleged unlawful practice occurred . . .

29 U.S.C.A. § 626(d). The timeliness [*13] of a discrimination claim is measured from the date the claimant received notice of the discriminatory action, and not from the date that the discriminatory action took effect. *Chardon v. Fernandez*, 454 U.S. 6, 70 L. Ed. 2d 6, 102 S. Ct. 28 (1981); *Delaware State College v. Ricks*, 449 U.S. 250, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980).

> n4 Section 633(b) applies if the state has an agency with authority over such claims. Connecticut has such an agency. See *Miller v. ITT Corp.*, 755 F.2d 20, 24 (2nd Cir. 1985); *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2nd Cir. 1985).

The court concludes that the early retirement incentive program is analytically distinct from the chart. The state, when describing the program, explained:

> There shall be an Early Retirement Incentive Program offered to full time State employees during the 1991-1992 [*14] fiscal year in addition to the normal retirement program. (emphasis added).

Further, the plaintiff questioned the early retirement incentive program itself and not just the application of the chart. n5 Thus, the court concludes that the plaintiff's cause of action was timely filed within 300 days after she was notified of the challenged incentive plan.

> n5 The program awards three incentive years of retirement credit to eligible employees. These additional years create a higher number of years of service to be applied to the chart. The plaintiff claimed that she only received an additional six months service credit, instead of an additional three years.

B. Law Applicable to ADEA Claim

In *Public Employees Retirement Sys. of Ohio v. Betts*, 492 U.S. 158, 159, 106 L. Ed. 2d 134, 109 S. Ct. 2854 (1989), the Supreme Court held that section 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2), "exempts all provisions of bona [*15] fide employee benefit plans from the purview of the ADEA, unless the plan is a subterfuge for discrimination in the nonfringe-benefit aspects of the employment relationship." Thereafter, in 1990, Congress enacted amendments to the ADEA which had the effect of repudiating the Supreme Court's holdings in Betts. n6 The defendant claims that the plaintiff's action must be analyzed pursuant to Betts, rather than the 1990 amendments to the ADEA. In response, the plaintiff asserts that the reduction in benefit accrual for pension benefit plans on account of age is a direct violation of the ADEA, 29 U.S.C. § 623(i), and that the 1990 amendments and Betts are "almost wholly inapplicable to the instant claim." The plaintiff argues that "the explicit statutory prohibition is not at issue in the PERS v. Betts line of cases; no discriminatory intent or effect need be proven to be the impetus behind an express statutory violation such as at issue here." Notwithstanding the plaintiff's assertion that the defendant directly violated the ADEA, and is therefore, liable in any event, the issue of liability still requires a determination as to whether [*16] the 1990 amendments are applicable to the case at bar.

> n6 Under the 1990 amendments, the ADEA permits age-based reductions in employee benefit plans only where justified by substantial cost considerations. Further, the employer has the burden of establishing that its actions are lawful, unlike in Betts where the employee must show that the employer's actions are unlawful. *Finnegan v. Trans World Airlines*, 767 F. Supp. 867, 874 (N.D. Ill. 1991).

Under 29 U.S.C.A. § 623, Historical and Statutory Notes, the section entitled "Effective Date of 1990 Amendment" states:

> With respect to any employee benefits provided in accordance with a collective bargaining agreement -
> (1) that is in effect as of the date of enactment of this Act [Oct. 16, 1990] . . .
> (2) that terminates after such date of enactment;
> (3) any provision of which was entered into by a labor organization (as defined by § 6(d)(4) of the Fair Labor Standards Act of 1938 *(29 U.S.C. § 206* [*17] *(d)(4)))*; n7 and
> (4) that contains any provision that would be superseded (in whole or part) by this title . . . but for the operation of this section,

this title and the amendments made by this title shall not apply until the termination of such collective bargaining agreement or June 1, 1992, whichever occurs first.

Accordingly, the 1990 amendments do not apply with respect to any employee benefits if: 1) the benefits are in accordance with a collective bargaining agreement entered into by a labor organization; 2) the collective bargaining agreement was in effect by October 16, 1990; and 3) the collective bargaining agreement terminates after October 16, 1990. Further, 4) amendments will not apply until the termination of the collective bargaining agreement or June 1, 1992, whichever comes first.

n7 This section defines labor organizations as "any organization . . . agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work . . . ." *29 U.S.C. § 206*(d)(4).

[*18]

Here, the court concludes that the early retirement incentive plan was in accordance with a collective bargaining agreement. n8 Further, that agreement, i.e. SEBAC I, was in effect prior to October 16, 1990; and terminates after October 16, 1990. n9 The court finds that the 1990 amendments to the ADEA are inapplicable to the present case since they would not apply until June 1, 1992, at which point the incentive plan would have already expired. Accordingly, pursuant to *29 U.S.C.A. § 623*, Historical and Statutory Notes, the law prior to the enactment of the amendments, i.e. Betts, governs this action. n10

n8 SEBAC II modified SEBAC I, the then current collectively bargained pension agreement between the state and SEBAC. SEBAC II created the early retirement incentive plan.

n9 SEBAC I is effective from July 1, 1988 to June 30, 1994.

n10 In an analogous case, a New York district court retroactively applied Betts. See *Cipriano v. Bd. of Educ. of City Sch. Dist. of City of N. Tonawanda, N.Y., 772 F. Supp. 1346 (W.D.N.Y. 1991)*, aff'd, *968 F.2d 1502 (2nd Cir. 1992)*. The district court held that "when [the Supreme] Court itself has given retrospective application to a newly-adopted principle, 'no sound reason exists for not doing so here.'" *Id. at 1348* (citations omitted). The district court concluded that since the Supreme Court dismissed the case in Betts and remanded the decision to be considered in light of Betts, it intended that Betts apply retroactively. Id. After the passage of the 1990 amendments, the district court still applied the Betts standard. Id. The court concluded that "numerous courts have retroactively applied Betts, both before Congress' action and after." Id. See *Robinson v. County of Fresno, 882 F.2d 444, 445-46 (9th Cir. 1989)*; *Gabarczyk v. Bd. of Educ. of Sch. Dist. of Poughkeepsie, 738 F. Supp. 118, 122-23 (S.D.N.Y. 1990)*; *Grossman v. RCA Global Communications, 1991 WL 44837 (S.D.N.Y. March 22, 1991)*; *Bell v. Trustees of Purdue Univ., 761 F. Supp. 1360, 1363-5 (N.D. Ind. 1991)*.

[*19]

C. Age Discrimination in Employment Claims

The defendant first claims that the plaintiff cannot prevail on her claim of age discrimination n11 because she is unable to prove disparate treatment. The defendant argues that the plaintiff fails to demonstrate that the early retirement incentive plan treated her less favorably than any other group on account of her age. The defendant argues that the plaintiff's claim "ignores the fact that employees in the 70 and over age category reach the 50% salary level of pension benefits five years before everyone else, and that the retirement credits that everyone else is accruing between the 21st and 24th years are necessary to bring these employees up to the 50% level that she has already reached." Further, the defendant argues that many employees in the 70 and over age group received the full value of the three years of service credit. The defendant argues that the plaintiff fails to establish a prima facie case of age discrimination because she cannot show that the early retirement incentive plan purposely discriminated in "some non-fringe benefit aspect of the employment relation."

n11 The plaintiff claims she is discriminated against because employees under the age of 70 receive retirement credit for their 21st through 24th years of service and she does not.

[*20]

The plaintiff, in response, claims that "employees age 70 or over are denied retirement credit for their 21st

Case 3:03-cv-00914-DJS    Document 56-14    Filed 03/26/2004    Page 7 of 10

Page 6
1994 U.S. Dist. LEXIS 15608, *

through 25th years of service, while employees younger than 70 receive annual increases in retirement benefits." The gravamen of the plaintiff's claim is that it is unlawful for an employer to maintain a pension benefit plan which permits the cessation of an employee's benefit accrual. Further, the plaintiff argues that the plan discriminates by giving 50% benefits to those employees over 70 with only 20 years of service, instead of 25 years of service, which encourages the separation of older employees earlier in their career.

The question before the court is whether the plaintiff can establish a prima facie case of age discrimination in violation of the Age Discrimination in Employment Act (ADEA) by reason of the allegedly disparate treatment contained in the early retirement incentive plan. The ADEA, n12 under section 623(a)(1), makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's [*21] age.

29 U.S.C. § 623(a)(1). However, Section 4(f)(2) of the ADEA, provides that it is not unlawful for an employer:

> to observe the terms of . . . any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter . . . and no such . . . employee benefit plan shall require or permit the involuntary retirement of any individual . . . because of the age of such individual.

29 U.S.C. § 623(f)(2).

> n12 The ADEA provides courts with power "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter . . . ." 29 U.S.C. § 626(b).

In order to establish a cause of action for age discrimination in cases brought under the ADEA, the plaintiff must first establish a prima facie case of illegal age discrimination. *McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).* [*22] *Pena v. Brattleboro Retreat, 702 F.2d 322, 323-24 (2nd Cir. 1983).* n13

> n13 If the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the discharge and the plaintiff must then prove that the reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)* (citing *McDonnell-Douglas, 411 U.S. at 802-04).* The Supreme Court recognized that the proof required to establish a prima facie case may vary according to the factual situation. *Morita v. S. Cal. Permanente Medical Group, 541 F.2d 217, 219 (9th Cir. 1976)* (citation omitted).

The Supreme Court in *Public Employees Retirement Sys. of Ohio v. Betts, 492 U.S. 158, 106 L. Ed. 2d 134, 109 S. Ct. 2854 (1989),* [*23] held that the ADEA:

> ". . . forbids arbitrary discrimination by . . . employers against employees on account of age. Under § 4(f)(2) of the Act, 29 U.S.C. § 623(f)(2), however, age-based employment decisions taken pursuant to the terms of 'any bona fide employee benefit plan n14 such as a retirement, pension, or insurance plan, which is not a subterfuge n15 to evade the purposes of' the Act, are exempt from the prohibitions of the ADEA."

*Id. at 161.* In clarifying how section 4(f)(2), 29 U.S.C. § 623(f)(2), fits in with the plaintiff's prima facie case, the Supreme Court stated that:

> Section 4(f)(2) is not so much a defense to a charge of age discrimination as it is a description of the type of employer conduct that is prohibited in the employee benefit plan context. By requiring a showing of actual intent to discriminate in those aspects of the employment relationship protected by the provisions of the ADEA, section 4(f)(2) redefines the elements of a plaintiff's prima facie case . . . . Thus, when an employee seeks to challenge a benefit plan [*24] provision as a subterfuge to evade the purposes of the Act, the employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purposes of discriminating in some non-fringe-benefit aspect n16 of the employment relation.

Case 3:03-cv-00914-DJS    Document 56-14    Filed 03/26/2004    Page 8 of 10

Page 7
1994 U.S. Dist. LEXIS 15608, *

*Id. at 181.* Therefore, in order to make out a prima facie case, the court must determine: 1) whether the plan or program is of the type (i.e. bona fide benefit plan) subject to the exemption; and 2) whether the plan is "a subterfuge to evade the purposes of the" ADEA. *E.E.O.C. v. Boeing Services Int'l, 968 F.2d 549, 554-55 (5th Cir. 1992).*

    n14 In Betts, the Supreme Court stated that a plan is bona fide when "[it] exists and pays benefits." Id. at 166. (citation omitted). The New York district court in Cipriano held that an early retirement incentive plan is a "'bona fide employee benefit plan' in the sense that employees benefited and substantial benefits were paid to employees who were covered by it." *Cipriano v. Bd. of Educ., 700 F. Supp. 1199, 1205 (W.D.N.Y. 1988),* on reconsideration vacated in part, *772 F. Supp. 1346 (W.D.N.Y. 1991),* aff'd, *968 F.2d 1502 (2nd Cir. 1992)* (citation omitted). [*25]

    n15 The Supreme Court defined subterfuge as "'a scheme, plan, stratagem, or artifice or evasion,' which, in the context of Section 4(f)(2), connotes a specific 'intent . . . to evade a statutory requirement.'" *Betts, 492 U.S. at 171.* (citation omitted).

    n16 The definition of non-fringe benefit aspects may be gleamed from the Supreme Court's conclusion in Betts that ". . . Congress left the employee benefit battle for another day, and legislated only as to hiring and firing, wages and salaries, and other non-fringe-benefit terms and conditions of employment." *Id. 492 U.S. at 177.* Therefore, non-fringe benefits deal with such issues as hiring and firing and wages and salaries.

In *Cipriano v. Bd. of Educ. (III), 772 F. Supp. 1346, 1347 (W.D.N.Y. 1991),* aff'd, *968 F.2d 1502 (2nd Cir. 1992),* an early retirement incentive plan was available to teachers between the ages of 55 and 60, who had more than twenty years [*26] of service in the school system. Id. The incentives were offered in addition to the benefits otherwise payable upon early retirement. Id. The plaintiffs had more than twenty years of service in the school system, but were over the age of 60, so they were not eligible to participate in the incentive plan. Id. They sued claiming that the plan was discriminatory under the ADEA. Id.

On reconsideration of its previous decision, the New York district court retroactively applied Betts, and noted that the burden was on the plaintiffs to show that the early retirement plan provision was intended to discriminate in some non-fringe benefit aspect of the employment relation such as hiring and firing or wages and salaries. *Id. at 1349.* The court held:

> Plaintiffs cannot make this showing. The retirement incentive plan offered by the Board was clearly a "fringe benefit." As the Second Circuit found, it "did not compel plaintiffs to take early retirement." *Cipriano (I), 785 F.2d at 58.* This case was brought, "not by employees who claim that they were tricked by the option into prematurely leaving the work force, [*27] but rather by employees who protest at having been excluded from the option." Id. Thus, the employee benefit plan at issue here did not discriminate in a "non-fringe-benefit aspect of the employment relationship." *Betts, 492 U.S. at 177, 109 S. Ct. at 2866,* and, as such, is outside the purview of the ADEA.

Id. The court vacated its prior decision in *Cipriano (II), 700 F. Supp. 1199 (W.D.N.Y. 1988),* reconsidered and vacated in part, *772 F. Supp. 1346 (W.D.N.Y. 1991),* aff'd, *968 F.2d 1502 (2nd Cir. 1992),* and granted defendants' motion for summary judgment. Id.

Here, the court concludes that the early retirement incentive plan constituted a bona fide employee benefit plan because it "exists and pays benefits." See *Public Employees Retirement Sys. of Ohio v. Betts, 492 U.S. 158, 166, 106 L. Ed. 2d 134, 109 S. Ct. 2854 (1989).* Further, the incentive plan was a "fringe benefit" as it dealt with pension benefits of eligible employees, and not wages or salaries. [*28] See *Cipriano v. Bd. of Educ., 700 F. Supp. 1199, 1205 (W.D.N.Y. 1988),* reconsidered and vacated in part, *772 F. Supp. 1346 (W.D.N.Y. 1991),* aff'd, *968 F.2d 1502 (2nd Cir. 1992); Betts, 492 U.S. at 177.* The early retirement incentive program did not force the plaintiff to take early retirement in violation of section 4(f)(2) of the ADEA, *29 U.S.C. § 623(f)(2),* and, in fact, she is still employed by the state. The plaintiff remains an active SERS member of tier I, plan C. Finally, the plaintiff does not allege, nor does she present evidence, that the incentive plan tricked her into retiring early. Rather, she asserts that she was excluded from receiving the full value of the incentive plan. The plaintiff argues that those employees over the age of 70 are denied increased retirement credit for their 21st through 25th years of service, while younger workers receive annual increases in retirement

benefits. However, the reason for the denial of increased retirement credit is because her annual retirement [*29] benefit rate reached the maximum of 50%. These are the same elements that were discussed by the court in *Cipriano, 772 F. Supp. 1346, 1349 (W.D.N.Y. 1991)*, aff'd, *968 F.2d 1502 (2nd Cir. 1992)*, when applying Betts. In Cipriano, the court found that the plaintiffs were unable to show that the defendant discriminated in some non-fringe benefit aspect and thus granted summary judgment to the defendants.

Based upon all of the foregoing, the court here concludes that the incentive plan did not discriminate in a non-fringe benefit aspect of the employment relationship. The defendant need not produce a legitimate, nondiscriminatory reason for its action, since the plaintiff failed to establish a prima facie case of age discrimination in violation of the ADEA. *St Mary's Honor Center v. Hicks, 125 L. Ed. 2d 407, U.S. , 113 S. Ct. 2742, 2747 (1993)*. Because the plaintiff has failed to establish a prima facie case, the court grants summary judgment to the defendant.

E. Application of 1990 Amendments

Assuming arguendo that the amended version of the ADEA is applicable, [*30] the plaintiff still fails to establish unlawful age discrimination under the ADEA. The plaintiff claims that the defendant's early retirement incentive program violates an express provision of the ADEA. The plaintiff argues that the ADEA specifically prohibits reduction in benefit accrual for pension benefit plans on account of age. The plaintiff refers to *29 U.S.C. § 623*(i) which states:

> (1) Except as otherwise provided in this subsection, it shall be unlawful for an employer . . . to establish or maintain an employee pension benefit plan which requires or permits- (A) in the case of a defined benefit plan, the cessation of an employee's benefit accrual, or the reduction of the rate of an employee's benefit accrual, because of age . . .

*29 U.S.C. section 623*(i). However, section (i)(2) states:

> Nothing in this section shall be construed to prohibit an employer . . . from observing any provision of an employee pension benefit plan to the extent that such provision imposes (without regard to age) a limitation on the amount of benefits that the plan provides or a limitation on the number of years of service [*31] or years of participation which are taken into account for purposes of determining benefit accrual under the plan.

The court concludes that the limitation on the amount of benefits that the plan provides is based upon the annual retirement benefit rate reaching a maximum of 50% and not on the age of the plaintiff. The plaintiff actually benefits by the plan since employees in her age category reach the maximum of 50% at 20 years of service credit, whereas younger employees do not reach 50% until 25 years of service credit. The plaintiff does not fail to receive benefits for the 21st through the 24th years of service, but receives 50% of her average salary, which is higher than any other age group. Further, employees in the 70 and over age category may apply the three incentive years to their service credit. n17

n17 For example, a 71 year old employee with 12 years of service can apply the three incentive years to accumulate a total of 15 years of service which would than be multiplied by 2.5% to determine the employee's annual retirement benefit rate.

[*32]

The defendant also claims that the incentive plan falls within the safe harbor of *29 U.S.C. § 623*(f)(2). The defendant argues that is was able to prove that the plan was voluntary and that it furthered the purposes of the ADEA. Section 623(f)(2) states:

> (f) It shall not be unlawful for an employer . . .
>
> (2) to take any action otherwise prohibited under subsection (a), (b), (c), or (e) of this section -
>
> (B) to observe the terms of a bona fide employee benefit plan -
>
> (i) where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker, as permissible under section 1625.10, title 29, Code of Federal Regulations; or
>
> (ii) that is a voluntary early retirement incentive plan consistent with the relevant purpose n18 or purposes of this chapter.

*29 U.S.C. § 623*(i)(2).

n18 The purposes of the ADEA are to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." *Ohio Pub. Employees Retirement System v. Betts, 492 U.S. at 159, 175-76, 106 L. Ed. 2d 134, 109 S. Ct. 2854 (1989).*

[*33]

The court concludes that the early retirement plan was voluntary. The plaintiff chose not to participate in the plan and she is still employed by the state which demonstrates that the plan did not compel employees to retire. The court also concludes that the early retirement plan does not violate the purpose of the ADEA. n19 As stated in SEBAC II, the plan hoped to accomplish a voluntary work force reduction and effect payroll savings among the agencies of state governments. These constitute legitimate reasons to establish an early retirement incentive plan. See *Cipriano v. Bd. of Educ., 700 F. Supp. 1199, 1205 (W.D.N.Y. 1988),* reconsidered and vacated in part, *772 F. Supp. 1346 (W.D.N.Y. 1991),* aff'd, *968 F.2d 1502 (2nd Cir. 1992).* The early retirement incentive plan now in question did not arbitrarily discriminate on the basis of age, but established a system in which older employees received increased benefits for shorter years of service. The court, therefore, concludes that the early retirement plan falls within the guidelines of *29 U.S.C. section 623* [*34] (i)(2).

n19 The ADEA's purposes are "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

CONCLUSION

Pursuant to the discussion herein, the defendant's cross-motion for summary judgment is granted and the complaint is dismissed as to the claims brought pursuant to the Age Discrimination in Employment Act. Further, having dismissed the federal claim, the plaintiff's remaining state claims are dismissed for lack of subject matter jurisdiction. n20

n20 The Supreme Court in *United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1968),* stated the following principles applicable to pendent jurisdiction:
> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well . . . .

[*35]

It is so ordered, this 18th day of August, 1994, at Hartford, Connecticut.

Alfred V. Covello

United States District Judge