LEXSEE 2000 U.S. APP. LEXIS 31863

STEVEN N. HUTCHINSON, Plaintiff-Appellant,-v-WEISS, PECK & GREER, L.L.C., et al., Defendants-Appellees.

No. 00-7351

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

2000 U.S. App. LEXIS 31863

December 13, 2000, Decided

**NOTICE:** [*1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *2000 U.S. App. LEXIS 36544.* Certiorari Denied May 14, 2001, Reported at: *2001 U.S. LEXIS 3617.*

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of New York (Sidney H. Stein, Judge).

**DISPOSITION:** AFFIRMED.

**LexisNexis (TM) HEADNOTES- Core Concepts:**

**COUNSEL:** Appearing for Appellant: LAURENCE MOY, Liddle & Robinson, New York, NY.

Appearing for Appellee: HOWARD J. KAPLAN, Arkin, Kaplan, & Cohen, New York, NY.

**JUDGES:** PRESENT: HONORABLE JOSEPH M. McLAUGHLIN, HONORABLE ROBERT D. SACK, Circuit Judges, HONORABLE ROBERT N. CHATIGNY, * District Judge.

> * The Honorable Robert N. Chatigny, United States District Court Judge for the District of Connecticut, sitting by designation.

**OPINION:**

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be, and it hereby is, AFFIRMED.

Steven Hutchinson appeals from the judgment of the United States District Court for the Southern District of New York (Sidney H. Stein, Judge) granting summary judgment to the defendants ("WPG"). For the reasons set forth below, we affirm.

Defendant Weiss, Peck & Greer is an [*2] investment management firm. In July 1993, it hired Steven Hutchinson to be the co-manager of its Private Equity Group with Wesley Lang, who had been acting as the manager since the prior manager left in early 1993. Hutchinson was 43 years old at the time he was hired; Lang was then 35 years old. Hutchinson, like every manager at WPG, was an "at will" employee. WPG fired Hutchinson in December 1997, when he was 48 years old. Hutchinson claims that WPG fired him because of his age and his desire to remain with the firm for another ten years. WPG insists that Hutchinson was fired for his poor performance.

Hutchinson filed a complaint on August 19, 1998, claiming age discrimination under the Age Discrimination and Employment Act (ADEA), *28 U.S.C. § 621,* and ten state law claims. The defendants moved to dismiss the complaint. In response, the district court stayed all state law claims and permitted discovery only on the age discrimination claim. At the close of discovery, WPG moved for summary judgment on the ADEA claim. The district court granted the motion on February 29, 1999, and dismissed the remaining state law claims for lack of subject matter jurisdiction. [*3]

The district court held that Hutchinson had not established a prima facie case of discrimination because he failed to show that his discharge occurred under circumstances giving rise to an inference of discrimination. The district court nevertheless assumed that Hutchinson had established a prima facie case and proceeded to consider whether the reasons provided by WPG were a pretext for age discrimination. The district court concluded that even if WPG's reason could be shown to be pretextual, there

was no evidence from which a reasonable jury could find that WPG's stated reason was a pretext for age discrimination.

We review the district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party. See *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," *Fed. R. Civ. P. 56(c)*, i.e., "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). [*4] An issue of fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The ADEA provides that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *29 U.S.C. § 623(a)(1)*. In an employment discrimination case, the plaintiff has the initial burden of "proving by a preponderance of the evidence a prima facie case of discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); see also *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). In order to establish [*5] a prima facie case, the plaintiff must show that he was "(1) within the protected age group; (2) qualified for the position; (3) discharged; and (4) that such discharge occurred under circumstances giving rise to an inference of discrimination." *Carlton v. Mystic Transportation, Inc.*, 202 F.3d 129, 134 (2d Cir. 2000); *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998). The burden of establishing a prima facie case has been characterized as "minimal." *Carlton, 202 F.3d at 134* (citations omitted).

If the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises. See id. The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for discharging the employee. See id. If the employer articulates a non-discriminatory reason for its employment decision, the presumption of discrimination raised by the prima facie case "simply drops out of the picture." *St. Mary's Honor Ctr., 509 U.S. at 510-11*. Then the plaintiff has the burden of proving that his age was the real reason for his discharge. A prima facie case plus evidence of falsity [*6] is neither necessarily sufficient nor necessarily insufficient to survive a motion for summary judgment. See *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2108-09, 147 L. Ed. 2d 105 (2000). Rather, a court must decide whether the plaintiff introduced enough evidence — either at the prima facie case level, by demonstrating pretext, or by evidence in addition to these — that considering the sum of all evidence, reasonable people could find that discrimination existed. See *Schnabel v. Abramson*, 232 F.3d 83, 2000 WL 1676601, at *7 (2d Cir. 2000).

Our cases establish that "the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion at the prima facie stage is de minimis." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). An inference of age discrimination can be established by evidence that the discharged employee was replaced by a younger employee. See id. We assume for purposes of this decision that Lang, who was younger than Hutchinson, replaced Hutchinson and that Hutchinson therefore made a prima facie case of age discrimination. Additionally, [*7] despite the fact that there is overwhelming evidence in the record that Hutchinson's performance both as an investor and as a manager was poor, we assume that WPG's stated reason for firing Hutchinson — poor performance — was pretextual.

Even if WPG's stated reason for firing Hutchinson was pretextual, the evidence is insufficient to support a reasonable inference that it was a pretext for age discrimination. As the Supreme Court held in Reeves, whether a prima facie case plus an employer's pretextual reason for firing is sufficient to overcome a motion for summary judgment depends on "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . ." *Reeves, 120 S. Ct. at 2109*. Hutchinson's prima facie case is extremely weak. He has very little evidence that the employer's explanation is false, and the evidence he offers does not permit an inference that the actual reason for his termination was related to his age. Thus, Hutchinson's prima facie case plus his proof that WPG's reason for his termination was pretextual does not provide [*8] evidence from which a reasonable jury could conclude that Hutchinson was terminated because of his age.

For these reasons, the opinion of the district court is AFFIRMED.

LEXSEE 1995 U.S. DIST. LEXIS 22075

DAVID R. YOUNG, Plaintiff, VS. BANK OF BOSTON CONNECTICUT AND BANK OF BOSTON CORPORATION, Defendants.

Civil No. 3:93CV1642(AVC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1995 U.S. Dist. LEXIS 22075*

March 30, 1995, Decided
March 31, 1995, Filed

**DISPOSITION:** [*1] Defendants' motion granted in part and denied in part.

**LexisNexis (TM) HEADNOTES- Core Concepts:**

**COUNSEL:** For DAVID R. YOUNG, plaintiff: Debra Susan Wilson, Wolcott, CT.

For DAVID R. YOUNG, plaintiff: Robert M. Fortgang, Greystone Court, Simsbury, CT.

For DAVID R. YOUNG, plaintiff: Judith D. Meyer, Avon, CT.

For DAVID R. YOUNG, plaintiff: Charles Robert Knight, The Courtyard, Simsbury, CT.

For EDITH J. YOUNG, plaintiff: Robert Warren Storm, Jr., West Hartford, CT.

For COLONIAL BANCORP, INC. dba Bank of Boston Connecticut, BANK OF BOSTON CORP., defendants: Diana Garfield, Burton Kainen, Miguel A. Escalera, Jr., Sheldon D. Myers, Shipman & Goodwin, Hartford, CT.

**JUDGES:** Alfred V. Covello, United States District Judge.

**OPINIONBY:** Alfred V. Covello

**OPINION:**

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is an action for damages alleging wrongful termination. It is brought pursuant to the Age Discrimination in Employment Act ("ADEA"), *29 U.S.C. § 621*, et seq.; the Employee Retirement Income Security Act ("ERISA") *29 U.S.C. § 1140;* and the Americans with Disabilities Act ("ADA"), *42 U.S.C. §§ 12111* et seq. The plaintiff alleges [*2] that the defendants wrongfully terminated his employment on account of his age and disability. Further, the complaint alleges intentional and/or negligent infliction of emotional distress pursuant to state common law.

The defendants now move for summary judgment, claiming there is no genuine issue as to any material fact, and that they are entitled to judgment as a matter of law. The issues presented are: 1) whether the plaintiff was unlawfully terminated because of his age; 2) whether the plaintiff's termination was in part motivated by the defendant's specific intent to interfere with the plaintiff's pension rights; 3) whether the plaintiff suffers from a disability cognizable under the Americans with Disabilities Act; and 4) whether the plaintiff can recover under intentional and/or negligent infliction of emotional distress. For the reasons contained herein, the defendants' motion is granted in part and denied in part.

**FACTS**

Examination of the complaint, affidavits and other supporting material discloses the following undisputed facts. The plaintiff, David Young, was born on November 1, 1938. In 1978, the plaintiff began working for the Bank of Boston-Connecticut's [*3] ("Bank") predecessor, Colonial Bank, in the area of trust administration. In 1982, the plaintiff became vice president with duties in trust administration. In 1982, he also was diagnosed with a stress-related heart condition. In 1990, the plaintiff occupied the position of senior account manager in the trust department. During this period the plaintiff received above average and superior performance ratings from the defendants.

In December 1990, Edward Fisher became the director of the division of the bank where the plaintiff worked. This division is known as The Private Bank. In 1991, the plaintiff began reporting to one Anthony Frigiani, who in turn reported to Fisher. Both Frigiani and Fisher were

not satisfied with the way the plaintiff handled several accounts, and concluded that the plaintiff had difficulties adjusting to an aggressive sales culture and team approach to account management. In March 1992, without personal knowledge of the plaintiff's putative deficiencies, Frigiani and Fisher rated the plaintiff's 1991 performance as "DM" or "does not meet job requirements." The plaintiff received this rating in part because the defendants considered him 'unreliable' due to medical [*4] absences. n1

n1 See Plaintiff's Exhibit 2

As a result of the DM rating, the defendants placed the plaintiff on a so-called "performance plan." A performance plan is a program of close supervision that constitutes a written warning that a failure to improve performance can result in job termination. Under the plan, the plaintiff, as a vice president, was transferred to a different unit of The Private Bank known as the Invested Funds Group ("IFG") where he reported to an assistant vice president, Jane Connery.

At the IFG, Connery and her supervisor, one Charles Champagne, consulted with the plaintiff and organized his new responsibilities under the plan. The plaintiff agreed that these new responsibilities were within his abilities. However, three months later, Connery sent a memorandum to Champagne discussing the plaintiff's progress. In the memo, Connery wrote that the plaintiff's performance had not improved because he lacked "initiative and had difficulty completing routine tasks." n2 Shortly thereafter, Champagne [*5] advised the plaintiff that his performance remained unsatisfactory, or DM, n3 and terminated the plaintiff. n4

n2 See Bank of Boston Memorandum, July 13, 1992 from Connery to Champagne.

n3 See Bank of Boston Memorandum, Champagne to Young, July 13, 1992. Plaintiff's Exhibit 10.

n4 See Plaintiff's Exhibit C, The Defendant's Response to CHRO at 6.

**STANDARD**

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. See *Bryant v. Maffucci, 923 F.2d 979, 982* (2d Cir.), cert. denied, *502 U.S. 849, 112 S. Ct. 152, 116 L. Ed. 2d 117 (1991)*. A plaintiff raises a genuine issue of material fact if "the jury could reasonably find [*6] for the plaintiff." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. Rule 56(c) "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, 477 U.S. at 247-48* (emphasis original). The Supreme Court has noted that

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex v. Catrett, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [and] it should be interpreted in a way that allows it to accomplish this purpose. *Celotex v. Catrett, 477 U.S. 317, 323-24, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. [*7]

When the issue in a case is an employer's intent, summary judgment should be used sparingly. *Meiri v. Dacon, 759 F.2d 989, 998* (2d. Cir.), cert. denied, *474 U.S. 829, 88 L. Ed. 2d 74, 106 S. Ct. 91 (1985)*. Nevertheless, a plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson, 477 U.S. at 256*.

**DISCUSSION**

**I. Count One: Age Discrimination (ADEA).**

The plaintiff first claims that the defendants discharged him because of his age, and therefore violated the ADEA. The ADEA provides that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *29 U.S.C. § 621 (a) (1)*. The Supreme Court has developed a three-step shifting burden test for Title VII discrimination cases. *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*. This test also applies to cases brought under the ADEA. *Geller v. Markham,*

*635 F.2d 1027, 1032 (2d Cir. 1980).* [*8] Under the test, the plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the defendants to articulate a legitimate, non-discriminatory reason for the action. Finally, the burden of production shifts back to the plaintiff to refute the defendants' proffered reason and show that it is really a pretext for discrimination. *McDonnell Douglas Corp., 411 U.S. at 802-803; Mieri v. Dacon, 759 F.2d at 997.* Recently, the Supreme Court has modified the third step of the test to require the plaintiff to show both that the defendants' articulated reason is false and that the true reason is illegal discrimination. See *St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).*

A. The Plaintiff's Prima Facie Case

The plaintiff's first burden under McDonnell Douglas is to establish a prima facie case of discrimination. The nature of the plaintiff's burden of proof at the prima facie stage is de minimis. See *Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988).* In Title VII and ADEA cases, the plaintiff establishes a prima [*9] facie case of unlawful termination by showing that: 1) the plaintiff was a member of the protected class, i.e., that he was between the ages of 40 and 65 years of age; (2) he was qualified for the job; 3) he was discharged from the job; and 4) the discharge occurred under circumstances giving rise to an inference of age discrimination. *Levin v. Analysis and Technology, Inc., 960 F.2d 314, 316 (2d Cir. 1992); Montana v. First Federal Savings & Loan of Rochester, 869 F.2d 100, 104 (2d Cir. 1989); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).*

In the present case, the defendants argue that the plaintiff's prima facie case fails for want of circumstances giving rise to an inference of age discrimination. The plaintiff responds, inter alia, that an inference of age discrimination is supported by the fact that the plaintiff is a member of the protected class and received above average and superior performance ratings from the defendants for twelve years prior to 1991. While this fact is inadequate to prove the plaintiff's ultimate burden of illegal discrimination, it is adequate [*10] to establish the de minimis showing of circumstances giving rise to an inference of discrimination. See *Woolley v. Bank of Boston, 1993 U.S. Dist. LEXIS 21239,* Civil No. 3:92CV00233 (AVC) (D. Conn. 1993); *Getschmann v. James River Paper Co., 822 F. Supp. 75, 65 Fair Empl. Prac. Cas. (BNA) 1047, at 1049 (D. Conn. 1993).* Accordingly, the court concludes that the plaintiff has established an inference of age discrimination.

B. The Defendants' Non-Discriminatory Reason

To rebut the inference of discrimination established by the plaintiff's prima facie case, the defendants must articulate a legitimate, non-discriminatory reason for discharging the plaintiff. *Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)* (emphasis added). The defendant must state a "clear and specific" reason. *Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985).*

In the present case, the defendants have stated that they discharged the plaintiff because of poor performance. An employee's work performance is a legitimate consideration, and on its face may be treated as the articulation of a legitimate, non-discriminatory reason. See Woolley v. Bank of Boston [*11] Civil No. 3:92CV00233 (AVC) (D. Conn. 1993). Accordingly, the court concludes that the defendants have sufficiently rebutted the inference of discrimination raised by the plaintiff's prima facie case.

C. The Plaintiff's Evidence of Pretext

Finally, the plaintiff must show that the reason given by the defendants was false and that illegal discrimination was the real reason. *St. Mary's Honor Center v. Hicks, 113 S. Ct. at 2751 (1993)* (emphasis added)." The plaintiff may satisfy this burden by persuading the court that ... the employer's proffered reason is unworthy of credence." *McDaniel v. Temple Independent School District, 770 F.2d 1340 (5th Cir. 1985).*

> the factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will permit [but does not compel] the trier of fact to infer the ultimate fact of intentional discrimination. . . [and] no additional proof of discrimination is required.

*St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993)* [*12]

The evidence offered by the defendants to show legitimate reasons for the termination is in the form of the plaintiff's "DM" or "does not meet requirements" performance evaluation for 1991, and the plaintiff's failure to succeed under a 1992 performance plan. However, the plaintiff has produced competent evidence to dispute the validity of both the 1991 performance evaluation and the results of the 1992 performance plan. n5 The evidence is as follows:

> n5 The defendant also argues that statistical

analysis of terminations from 1989-1992 demonstrates that older employees were less likely to be terminated than younger employees. Accepting this as true, the analysis nevertheless has limited value in the instant case. The Second Circuit has held that in the absence of direct evidence of discrimination, a plaintiff may use statistical evidence to show a "pattern or practice" of discharging older employees. Such a "pattern or practice" can establish an inference of age discrimination. *Haskell v. Kaman Corp., 743 F.2d 113, 119 (2d Cir. 1984), Stanojev v. Ebasco Services, Inc., 643 F.2d 914 (2d Cir. 1981).* Accordingly, it necessarily follows that statistics may be used by a defendant to rebut a plaintiff's inference of discrimination based upon an allegation of a pattern or practice of discharging older employees. However, in the instance case, the plaintiff does not rely upon evidence of such a "pattern or practice" of discharging older employees to show an inference of age discrimination.

[*13]

Prior to the plaintiff's 1991 performance evaluation, it is undisputed that the plaintiff received above average and superior ratings from the defendant. In evaluating the plaintiff's 1991 performance, Frigiani testified that he originally rated the plaintiff's performance as "usually meets job requirements" but was ordered to down-rate the plaintiff to "DM" or "does not meet job requirements" by Fisher. n6 In support of this DM rating, both Fisher and Frigiani cite numerous reasons in the written evaluation. However, their depositions indicate that not only did they not have any personal knowledge of the plaintiff's putative deficiencies, but that the factual predicate for the poor review may have been erroneous. n7

> n6 Frigiani Deposition at 70. Plaintiff's Exhibit 10.
>
> n7 I. The plaintiff's 1991 Performance Rating says that the plaintiff "failed to identify and take mitigating action in regard to trusts which could potentially expose The Private Bank to significant fiduciary liability." Deposition testimony of Frigiani indicates this statement was made because the plaintiff failed to notify management of problems involving two accounts: Waterbury Screw Machine Products Co. and Balfe. However, Fisher's deposition indicates that he only had independent knowledge of the Waterbury Screw Machine Products Co. account, and that management was fully aware of the account problems.
>
> II. The plaintiff's 1991 Performance Rating states that the plaintiff "appears to be a reluctant participant in the referral process." However, the review fails to mention the undisputed fact that the plaintiff received the Ritz Award for his referrals in December 1991. Frigiani states in his deposition that he did not remember this.
>
> III. The 1991 Performance Rating states that the plaintiff's "attendance is irregular" and his "reliability is questionable." Frigiani testified in his deposition that the plaintiff's reliability is questionable solely because of poor attendance, but had no personal knowledge that the plaintiff had an attendance problem. Fisher testified in his deposition that a good attendance rating would result even of the employee missed 7 to 10 days above vacation time. In the plaintiff's deposition, he claims to have missed on 1 1/2 days for illness in 1991.
>
> VI. The 1991 Performance Rating states that the plaintiff is "aloof and uncommunicative." Both Fisher and Frigiani had no personal knowledge of this, and affidavits of former defendant bank colleagues Alwin Manke and Jacqueline Ritacco state the plaintiff is not "aloof and uncommunicative."

[*14]

The circumstances surrounding the plaintiff's performance evaluation also disclose that both Fisher and Frigiani disregarded the defendants' standards for evaluating employees. Specifically, when the plaintiff began reporting to Frigiani in 1991, Frigiani did not counsel the plaintiff regarding his performance goals for 1991. n8 Accordingly, if the standards had changed for the plaintiff under Frigiani's management, the plaintiff was never notified. Further, Fisher also did not comply with the rating standards by signing the plaintiff's 1991 performance evaluation before the plaintiff had the chance to see it: n9 This deprived the plaintiff of the opportunity to make a written rebuttal or dispute the factual predicate for the poor review prior to a final disposition.

> n8 Frigiai Deposition at 62.
>
> n9 See Plaintiff's Exhibit 3: 1991 Appraisal.

Accordingly, the court concludes that the plaintiff has established a genuine issue of material fact that the reasons given by the defendants for the plaintiff's [*15] termination are not worthy of belief. Since a trier of fact could infer the ultimate fact of intentional discrimination, the defendants' motion for summary judgment as to count one is denied.

## II. Count Two: ERISA Discrimination.

The defendants next move for summary judgment as to count two, asserting that the plaintiff's claim of ERISA discrimination is not supported by the facts. The plaintiff responds that since he was terminated approximately six months prior to becoming eligible for $15,500 worth of bridge pension and medical benefits, he has produced sufficient evidence to withstand a motion for summary judgment. The court agrees with the plaintiff.

In order to prevail under the Employee Retirement Income Security Act, ("ERISA"), *29 U.S.C. § 1140*, a plaintiff must demonstrate that his employer was at least in part motivated by the specific intent to interfere with the plaintiff's pension rights. See *Dister v. The Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988)* cert. denied, *484 U.S. 979 (1987); Titsch v. Reliance Group, Inc., 548 F. Supp. 983 (S.D.N.Y. 1982)*, aff'm mem., [*16] *742 F.2d 1441 (2d Cir. 1983); Kelly v. Chase Manhattan Bank, 717 F. Supp. 227 (S.D.N.Y. 1989)*. "Where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth sufficient evidence to defeat summary judgment." *Corum v. Farm Credit Services, 628 F. Supp. 707, 718 (D. Minn. 1986)*.

Since establishing the specific intent to interfere with an employee's benefit rights is critical to a claim under *29 U.S.C. § 1140*, and is seldom the subject of direct proof, the Second Circuit has adopted the three-step analytical framework for indirect proof of intent as applied in Title VII cases. See *Dister v. Continental Group, Inc., 859 F.2d 1108 (2d Cir. 1988)* citing *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*.

The plaintiff's first burden under McDonnell Douglas is to establish a prima facie case of unlawful termination under ERISA. The nature of the plaintiff's burden of proof at the prima facie stage is de minimis. See *Sweeney v. Research Found. of the State Univ. of N.Y., 711 F.2d 1179, 1184 (2d. Cir. 1983)*. [*17] In Title VII, ADEA, and ERISA cases, a plaintiff establishes a prima facie case of unlawful termination by showing that the plaintiff: 1) belongs to the protected group; 2) was qualified for the position; and 3) was discharged under circumstances that give rise to an inference of discrimination. See *Dister v. Continental Group, Inc., 859 F.2d 1108, 1114-15 (2d Cir. 1988)*. An inference of ERISA discrimination has been established where an employer discharged a vested employee four months and seven days before an additional $550,000 worth of pension benefits were to vest. *Dister, 859 F.2d at 1117 (2d Cir. 1988)*. See also *Corcoran v. Gab Business Services, Inc., 723 F. Supp. 966, 970 (S.D.N.Y. 1989)*.

Applying these standards to the instant case, the plaintiff has made out a prima facie case sufficient to defeat summary judgment. The plaintiff: 1) is in the protected group because *29 U.S.C. § 1140* protects those employees who have an opportunity to attain rights in a covered benefit plan; 2) was qualified for the position; and 3) was discharged approximately six months before becoming eligible for $15,500 in [*18] additional pension benefits. This gives rise to an inference of discrimination under the de minimis standard.

With respect to the second and third prong of McDonnell Douglas, i.e., the defendants' non-discriminatory reason, and the plaintiff's evidence of pretext, discussed infra, the defendant is not entitled to summary judgment. The plaintiff has raised a genuine issue of material fact that the defendants' articulated reason for his termination is false. Since "the factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the prima facie case, suffice to show intentional discrimination," *Hicks, 113 S. Ct. at 2749 (1993)*, the court denies the defendants' motion for summary judgment as to count two.

## III. Count Three: Disability Discrimination.

The defendants next move for summary judgment as to count three on the grounds that the plaintiff has not produced any facts that he is "disabled" within the meaning of the Americans With Disabilities Act ("ADA"), *42 U.S.C. § 12111* et seq. The plaintiff responds that as the victim of a stress-related heart condition, he is "disabled" [*19] within the meaning of the Act. The court agrees with the plaintiff.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to . . .[the] discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *42 U.S.C. § 12111*(a). The ADA defines "a qualified individual with a disability" as "an individual with a disability who, with or without accommodation, can perform the essential functions of the employment position that such individual holds or desires." *42 U.S.C. § 12111*(8).

In order to be viewed as a "qualified individual with a disability," a plaintiff must first establish that

> A) he has a physical or mental impairment that substantially limits one or more of his major life activities; or
> B) he is a person with a record of such impairment; or
> C) he is regarded has having such impairment.

*42 U.S.C. §§ 12102*(2)(A) – (C).

"Major life activities" are those basic activities that the average person can perform with little or no difficulty such as walking, [*20] seeing, hearing, speaking, breathing, sitting, standing, reaching, learning, and working. *29 C.F.R. § 1630.2 (i)*. n10

> n10 Although the ADA does not specifically define "major life activities," the ADA regulations adopt the definition of "major life activities" as provided in the Rehabilitation Act of 1973 regulations, 34 C.F.R. 104. See 29 C.F.R. Pt. 1630, Appendix to Part 1630. Interpretive Guidance On Title I of the Americans With Disabilities Act, 1630.2(i). Major Life Activities.

The court concludes that the plaintiff has established that the defendants "regarded" him as a "qualified individual with a disability" within the meaning of *42 U.S.C. § 12102*(2)(C). In order to fall within the "regarded as" definition, the plaintiff must prove that the defendants considered the plaintiff's impairment to foreclose not simply a particular job, but the type of employment involved generally. In Forrisi v. Bowen, n11 *794 F.2d 931, 934 (4th Cir. 1986)* an employer discharged [*21] an acrophobic employee who could not meet a job requirement of engineering at high altitudes. The employee sued, alleging disability discrimination. The court granted the employer's motion for summary judgment, holding that since the employer never doubted the employee's engineering abilities, but merely perceived him as unable to exercise his knowledge at high altitudes, there was no disability discrimination. "Far from being regarded as having a 'substantial limitation' in employability, [the plaintiff] was seen as unsuited for one position in one plant, and nothing more." *Id. at 935.* See also *Scharff v. Frank, 791 F. Supp. 182, 187 (S.D. Ohio 1991)* ("an impairment that affects only a particular job or narrow range of jobs does not substantially limit the major life activities of the impaired individual.")

> n11 While this case was decided under the Rehabilitation Act of 1973, "Congress intended that the relevant case law developed under the Rehabilitation Act should be generally applicable to the term 'disability' as used in the ADA." 20 C.F.R. Pt. 1630, Appendix to Part 1630— Interpretive Guidance on Title I of the Americans With Disabilities Act, citing S. Rep. No. 116, 101st Cong., 1st Sess. 21 (1989). See also *Bolton v. Scrivner, Inc., 36 F.3d 939 (10th Cir. 1994)*

[*22]

In the present case, the plaintiff suffers from "chest pain syndrome with normal coronary arteries and chronic atrial fibrillation." n12 This condition is controlled by the plaintiff with medication. The plaintiff's physician n13 testified that at the time of the plaintiff's termination, the plaintiff was quite able to perform white collar or sedentary work. Nevertheless, the plaintiff has produced direct evidence in the form of his 1991 evaluation that the defendants regarded him as "unreliable" due to his medical absences. In other words, the defendants regarded the plaintiff's impairment to foreclose his ability regularly to attend work, an impairment which would foreclose his success in any position. Accordingly, the plaintiff has established that the defendants regarded him as having an impairment which substantially limits his major life activity of working, and may be considered "disabled" within the meaning of the Americans With Disabilities Act. Therefore, the defendants' motion for summary judgment as to count three is denied.

> n12 Borkowski Deposition at 8.
>
> n13 Dr. Borkowski Deposition at 20, 26, 28, and 30.

[*23]

### IV. Count Five: Negligent and Intentional Infliction of Emotional Distress.

A. Negligent Infliction of Emotional Distress.

On December 6, 1993, the court dismissed the plaintiff's claim of negligent infliction of emotion distress based upon acts that occurred during the course of the plaintiff's employment. The defendants now move for summary judgment, claiming that the plaintiff has not demonstrated facts sufficient to show distress allegedly occurring at or after the plaintiff's discharge. The court agrees with the defendants.

In Connecticut, in order for a plaintiff to prevail on a claim for the unintentional infliction of emotional distress, the plaintiff must show that the defendants should have realized that their conduct involved an unreasonable risk of causing the plaintiff to suffer emotional distress and should have realized that the distress, if it were caused, might result in illness or bodily harm. *Montinieri v. Southern New England Telephone Co, 175 Conn. 337, 341, 398 A.2d 1180 (1978); Bertozzi v. McCarthy, 164 Conn. 463, 469, 323 A.2d 553 (1973).*

A claim for negligent infliction of emotional distress has been [*24] recognized by the Connecticut supreme

court in the employment field where it is "based upon unreasonable conduct of the defendants in the termination process." *Morris v. Hartford Courant Co., 200 Conn. 676, 681-82, 513 A.2d 66 (1986).* As explained in Hill v. Kimberly-Clark Corp., Civil No. B-86-597 (EBB) (D. Conn. March 4, 1988), "under Morris, an action for negligent infliction of emotional harm focuses on the manner of discharge; whether the employer's conduct in the termination was unreasonable, not whether the termination itself was unreasonable." "Failing to introduce evidence from which it could be inferred that [the] defendants' conduct was so egregious that it should have realized that it was creating a risk of causing emotional distress defeats a claim of unintentional infliction of emotional distress." Burns v. Intermagnetics General Corp., Civil Docket No. N-85-152 (August 26, 1986), slip op. at 7. "In essence, [the] plaintiff argues that anytime an employer terminates an employee, a negligent infliction of emotional distress has occurred. Such is not the law." Id.

In the present case, the plaintiff argues that since the defendants were [*25] aware that the plaintiff suffers a stress-related heart condition, the defendants should have known that their conduct in terminating him would cause distress resulting in physical harm. However, the plaintiff has not produced any evidence of egregious conduct during the termination process. On July 30, 1992, the plaintiff had an appointment with Champagne, who simply indicated to the plaintiff that he was terminated for poor performance. The plaintiff and Champagne later met with a human resources representative. No one at either meeting was abusive, rude or nasty, just factual and "cold professional." n14 The plaintiff has had no conversations with his former supervisors since his separation. n15 The plaintiff's own description of the termination process does not show that the defendants' conduct was unreasonable in any way. Accordingly, the plaintiff's claim of negligent infliction of emotional distress fails because it is unsupported by the facts.

> n14 See Young Deposition at 53-54.
>
> n15 See Young Deposition at 53.

[*26]

B. Intentional Infliction of Emotional Distress

The defendants next move for summary judgment as to the plaintiff's claim of intentional infliction of emotional distress. The defendants argue that since the plaintiff can not establish an essential element of his case, i.e., that their behavior was 'extreme and outrageous,' they are entitled to summary judgment as a matter of law. The plaintiff responds that if a jury finds that the defendants 1) engaged in pretext; 2) fabricated the plaintiff's shortcomings on the 1991 performance evaluation; 3) placed the plaintiff on a remedial program for non-existent shortcomings; 4) fired the plaintiff in violation of ADEA, ERISA, and ADA; and 5) purposely aggravated the plaintiff's heart condition, then such conduct would rise to the level of an intent to cause the plaintiff emotional distress.

The Connecticut supreme court has recognized the tort of intentional infliction of emotional distress in the employment context. *Petyan v. Ellis, 200 Conn. 243, 253-55, 510 A.2d 1337 (1986).* According to Petyan, in order to state a claim for the intentional infliction of emotional distress, the plaintiff must prove material [*27] facts which show,

> 1) that the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct;
> 2) that the conduct was extreme and outrageous;
> 3) that the defendant's conduct was the cause of the plaintiff's distress; and
> 4) that the emotional distress sustained by the plaintiff was severe.

*Id.* at 253 (citing *Hiers v. Cohen, 31 Conn. Supp. 305, 329 A.2d 609 (Super. Ct. 1973);* 1 *Restatement (Second) of Torts* 46 (1965)). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Restatement (Second) of Torts, § 46.* Comment (1965). The Connecticut supreme court in Petyan adopted Prosser and Keeton's characterization of 'extreme and outrageous' conduct:

> the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.

*Petyan, 200 Conn. at 254 n.5, 510 A.2d 1337 (1986)* [*28] (emphasis original). Further, in *Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 17, 597 A.2d 846, 847 (Conn. Super. Ct. 1991),* the court, in citing 1 *Restatement (Second) of Torts § 46* stated,

> the 'extreme and outrageous' character of the conduct may arise from the actor's knowledge that the other is peculiarly suscepti-

ble to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, [even] where it would not be so if he did not know.

*597 A.2d at 847 (Conn. Super. Ct. 1991)*. However, "it is not clear yet what type of conduct would give rise to liability under this standard." *Koehler v. Chesebrough-Ponds, Inc., 705 F. Supp. 721, 724 (D. Conn. 1988)* (in ADEA action, pendent jurisdiction denied for claim of intentional infliction of emotional distress because jurisdiction would require court to resolve thorny issue of 'extreme and outrageous' conduct, which is unsettled under state law.) Since Koehler, the Connecticut Supreme Court has yet to better define the threshold standard for 'extreme and [*29] outrageous' conduct in the employment context.

In this case, a jury could find that the defendant engaged in pretext, fabricated the plaintiff's shortcomings on the 1991 performance evaluation, placed the plaintiff on a remedial program for non-existent shortcomings, and fired the plaintiff in violation of the ADEA, ERISA and the ADA with full knowledge that the plaintiff suffered a stress-related heart condition. In the absence of more precisely drawn standards of 'extreme and outrageous,' the court can not say at this juncture that such conduct, if shown to be true, is not 'extreme and outrageous.' Accordingly, the defendants' motion for summary judgment as to count five is denied insofar as count five states a claim for intentional infliction of emotional distress.

**CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment (document no. 20) is granted only to the extent that count five states a claim for negligent infliction of emotional distress. The motion is denied in all other respects.

SO ORDERED this 30th day of March, 1995 at Hartford, Connecticut.

Alfred V. Covello

United States District Judge