UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER COCCARO, SR., :  Plaintiff, : vs. : AT&T CORPORATION, :  Defendant. : | CIVIL ACTION NO.: 3:03 CV 914 (DJS) April 21, 2004 |

### PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT

Pursuant to Local Rule 56(a)(2), the plaintiff, Peter Coccaro hereby submits this statement responding to Defendant's Local Rule 56(a)(1) Statement of Undisputed Facts. As per the Local Rule, the paragraphs below correspond to the paragraph numbers used in the Defendant's Statement:

1. Agreed.

2. Agreed.

3. Agreed.

4. Agreed. Although Swarts was only one of the people involved in the hiring process. (Coccaro Dep. 50-60).

5. Disagreed. Plaintiff was asked to babysit Trinque's accounts while she was out. (Coccaro Dep. 81). Swarts just wanted to make sure that nothing fell between the cracks while Trinque was out. (Coccaro Dep. 81). The only effort required was that Coccaro would respond to incoming calls on Trinque's account. (Coccaro

Dep. 81).

6. Plaintiff agrees that younger employees are always given modules after they complete their training. (Coccaro Dep. 77, 182).

7. Disagreed, insofar as the statement appears out of context. Plaintiff was asked to babysit Trinque's accounts while she was out. (Coccaro Dep. 81). Swarts just wanted to make sure that nothing fell between the cracks while Trinque was out. (Coccaro Dep. 81). Trinque informed her customers that Coccaro would be the contact person in her absence and was prepared to handle matters in her absence but Coccaro was not taking over the accounts permanently. (Coccaro Dep. 81). The arrangement was acceptable to Coccaro because AT&T, Trinque, and Coccaro all believed that Trinque would only be out for a couple of weeks. (Coccaro Dep. 82). The effort only required Coccaro to respond to incoming calls on Trinque's account. (Coccaro Dep. 81).

8. Agreed. However, the defendant did not treat Trinque's module as plaintiff's. In fact, defendant instructed plaintiff not to visit the more lucrative accounts. (Coccaro Dep. 195, 200). Additionally, after plaintiff was discharged, Trinque returned from her leave and resumed working on the module in full. (LaCroce Dep. 155).

9. It is agreed that LaCroce monitored Coccaro's work on Trinque's module. However, Coccaro was merely baby sitting the module (See ¶ 7-8, above).

10. Disagreed. Unlike younger employees, Coccaro was not given his own module, had to babysit Trinque's module, and his sales efforts were hampered by LaCroce. (Coccaro Dep. 119-22, 195, 200).

11. Agreed.

12. Agreed. Although plaintiff questions LaCroce's sincerity in light of the evidence that LaCroce hampered his ability to sell. (Coccaro Dep. 119-22, 195, 200).

13. Agreed.

14. Agreed that LaCroce placed plaintiff on a PIP. As to the reason why, there is a factual dispute, as there is evidence that LaCroce hampered plaintiff's sales efforts, including but not limited to a situation involving an account called Stolt Nielsen. (Coccaro Dep. 119-22, 195, 200).

15. Agreed that defendant has accurately summarized a portion of the PIP. A younger employee, John Cibulay, had been employed for 6 months without making a single sale and was never placed on a PIP, even though a PIP was mandatory. (Coccaro Dep. 261; LaCroce Dep. 29-31, 122; Exhibit 7). Additionally, in Cibulay's seventh and eighth months of employment, his performance was such that LaCroce was required to place him on one of the applicable phases of the PIP policy. Nevertheless, LaCroce did not do so. (LaCroce Dep. 29-31; Exhibits 8 and 9).

16. Disagreed. The plaintiff has disputed the sincerity of LaCroce's conduct and observations. He alleged in his CHRO complaint and in the instant case that he was treated less favorably than a younger employee, Cibulay. (See ¶ 15 above and Exhibit 4). Plaintiff has alleged disparate treatment with respect to the amount of time that he was given to generate revenue in comparison to Cibulay. (See ¶ 15 above).

17. Agreed. However, the PIP policy was not consistently applied. Cibulay, a

younger employee, was treated more favorably under the PIP policy and was given more time to generate revenue. . (See ¶ 15 above). Cibulay did not sell anything during his first 6 months at AT&T and was not placed on a PIP, even though it was mandatory. (Coccaro Dep. 261; LaCroce Dep. 29-31, 122; Exhibit 7). Coccaro was not even employed for six months.

18. Agreed. LaCroce also told Coccaro that, under the policy, LaCroce had no obligation to employ Coccaro for the full 30 day period and that he had the right to terminate Coccaro before the 30 day period expired. (Coccaro Dep. 150).

19. Disagreed. Plaintiff was not employed for more than 6 months. He was employed for less than 6 months, from June 25, 2001 until December 10, 2001. (Coccaro Dep. 62, 260). Also, although defendant claims that Coccaro's sales over his 5 ½ months of employment justified his termination, a younger employee, Cibulay, was employed for 6 months without making a single sale and he was not terminated or placed on a PIP, despite the fact that a PIP was allegedly mandatory under such circumstances. (See ¶¶15-17, above). Additionally, with respect to the level of sales Coccaro generated, there is evidence that LaCroce hampered Coccaro's sales efforts. (See ¶¶10, 12, above).

20. Disagreed. Although defendant claims that Coccaro's sales over his 5 ½ months of employment justified his termination, a younger employee, Cibulay, was employed for 6 months without making a single sale and he was not terminated or placed on a PIP, despite the fact that a PIP was allegedly mandatory under such circumstances. (See ¶¶15-17, above). Additionally, with respect to the level of sales Coccaro generated, there is evidence that LaCroce hampered Coccaro's sales

efforts. (See ¶¶10, 12, above).  Defendant's true motive for terminating plaintiff is disputed.

21. Agreed.

22. Disagreed.  Cibulay was treated to more favorable treatment that plaintiff.  (See ¶¶10, 12, 15-17, above).  Additionally, with the exception of one warning letter, the adverse treatment to which Cibulay was subjected and on which defendant relies, occurred after plaintiff was fired and filed an EEOC complaint naming Cibulay as someone who received more favorable treatment with respect to generating revenue. (See Defendant's Exhibit J and Plaintiff's Exhibit 4).

23. Disagreed.  (See ¶¶15-17, above).

24. Agreed.  However, Cibulay was not placed on a PIP during his first 6 months, even though he failed to sell, as required by the PIP. (See ¶¶15-17, above).  Additionally, even after he passed the six month mark, Cibulay was not placed on any of the mandatory phases of the PIP, despite the fact that he qualified.  (See ¶¶15-17, above).

25. Agreed that plaintiff has not alleged direct evidence. As with most discrimination cases, plaintiff relies on circumstantial evidence.

26. Disagree.  Although Coccaro remained on the books until January 10, 2002, it was because Phase B of the PIP provided for a 30 day paid job search before the termination became effective. (Lacroce Dep. 31, 101).  It is undisputed though that Coccaro had received definite notice of termination on December 10, 2001.  On that day,  he surrendered his AT&T property and ceased performing services for AT&T. (Coccaro Dep. 152).  The security code for the building had even been

changed such that Coccaro could not gain access. (Coccaro Dep. 153). When Sullivan joined LaCroce's group on December 23rd, Coccaro was gone. Contrary to AT&T's assertion, Sullivan replaced Coccaro

**RESPECTFULLY SUBMITTED,**
**THE PLAINTIFF,**

By: _____/s/_____
Robert A. Richardson
Federal Bar No.: ct09818
GARRISON, LEVIN-EPSTEIN, CHIMES
 & RICHARDSON, P.C.
405 Orange Street
New Haven, CT 06511
Ph: (203) 777-4425
Fax: (203) 776-3965
rrichardson@garrisonlaw.com

## CERTIFICATION

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. mail, postage prepaid, this 21st day of April, 2004 to:

Stacy Smith Walsh, Esquire
**Day, Berry & Howard, LLP**
CityPlace I - 185 Asylum Street
Hartford, CT 06103-3499

_____/s/_____
Robert A. Richardson