UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER COCCARO, | : | CIVIL ACTION NO. 3:03CV914 (DJS) |
| Plaintiff, | : | |
| v. | : | |
| AT&T CORPORATION, | : | |
| Defendant. | : | MAY 6, 2004 |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Defendant, AT&T Corporation ("AT&T") hereby respectfully submits this reply brief in support of its Motion for Summary Judgment and in response to the Plaintiff's Opposition to said Motion.

In his Opposition to the Defendant's Motion for Summary Judgment, the Plaintiff attempts to muddy the waters of what is a very clear case by pointing to irrelevant and immaterial factual issues. However, not one of the issues raised by the Plaintiff's in his opposition is significant enough to withstand summary judgment. In essence, the allegedly material factual issues relied on by Plaintiff in his opposition are not in dispute.[1] And ultimately, the Plaintiff glosses over the most important factual issue, a fact that he cannot—and does not—dispute: that he only made one sale during his employment at AT&T. To be sure, the Plaintiff's brief raises excuses and reasons for his failure to produce any sales prior to being placed on a 30-day job search, but does not—

---

[1] As an initial matter, Plaintiff's brief relies in many places on the conclusory assertions of the Plaintiff in his deposition with respect to various factual issues. To the extent that these self-serving assertions form the basis of the Plaintiff's alleged disputes of material fact, the Court must not give them credence. "While all factual ambiguities must be resolved in favor of the nonmoving party, the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001).

and cannot—dispute the fundamental reason for his termination. The Plaintiff has failed to offer this Court any evidence that his own dismal failure as an Account Executive was the real, and the only, reason for his termination. For these reasons, as more fully described herein, the Defendant's Motion for Summary Judgment must be granted.

There are four primary factual issues raised by the Plaintiff in his Opposition in attempt to defeat summary judgment. First, the Plaintiff relies on the fact that John Cibulay, a younger account executive in Norwalk, Connecticut, was more favorably treated than the Plaintiff because he also had no sales in the first six months. Second, the Plaintiff relies on the allegedly disputed fact that the Plaintiff was never assigned a module. Third, the Plaintiff argues that a younger employee was hired to replace him. Finally, the Plaintiff asserts that AT&T prevented him from making his sales quota by not allowing him to sell to a large customer, Stolt Neilsen, with whom he had a good contact. This reply brief addresses each of these issues in turn. None of these facts—even if they are true as alleged by the Plaintiff—lead to an inference of discriminatory motive. As such, summary judgment is appropriate.

**A.    Summary Judgment Should Be Granted Because Plaintiff Has Failed to Establish a Prima Facie Case By Pointing to a Similarly Situated Employee Who Was Treated More Favorably that the Plaintiff**

The Plaintiff attempts to focus this Court's attention away from his own terrible sales performance by alleging that a "similarly situated" younger employee, John Cibulay, had equally poor performance, but was not terminated or was, at least, disciplined less harshly. (Opp. Memo at 18-20.) The Plaintiff is simply wrong. He has failed to compare himself to any "similarly situated" employee as that term is defined by this Court. An analysis of the sales performance of

the Plaintiff and John Cibulay reveals that these two were treated differently because they performed differently.

The law is clear that if a plaintiff wishes to establish a prima facie case by presenting evidence that similarly situated employees were treated more favorably, "the plaintiff must compare [him]self to employees who are similarly situated in all material respects." Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999). To be similarly situated, an employee "*must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.*" Cunliffe v. Sikorsky Aircraft, 9 F. Supp.2d 125, 130 (D. Conn. 1998) (emphasis added). Here, the Plaintiff has not established that John Cibulay engaged in conduct similar to his own. He has not and cannot establish that any other employee was as unsuccessful as he was in making sales, or that AT&T disciplined younger employees with similar terrible sales performance less harshly than it did Coccaro.

Courts, including this one, have repeatedly granted summary judgment to employers where the plaintiff fails to establish that "similarly situated" employees engaged in comparable conduct. See Ortiz v. Prudential Co., 94 F. Supp.2d 225, 234 (D. Conn. 2000) (granting summary judgment to employer because plaintiff failed to establish that similarly situated employees engaged in comparable conduct where employer produced evidence that other employees' infractions of same rule were less severe and warranted less severe punishment); Cunliffe, 9 F. Supp.2d at 130 (D. Conn. 1998) (granting summary judgment to employer finding that although a non-minority employee engaged in more numerous acts of misconduct than plaintiff, plaintiff failed to show that non-minority's conduct was similar).

Plaintiff's contention is that Joe LaCroce treated him differently than John Cibulay, a younger, allegedly similarly situated employee. However, if one examines the sales performance of both Cibulay and the Plaintiff after LaCroce became manager, it is clear that they were not at all similarly situated. Cibulay was treated differently by LaCroce, i.e., not placed on a PIP, because he outperformed the Plaintiff by actually making sales (LaCroce Dep. at 122) and by increasing the size of his funnel.[2] Moreover, when Joe LaCroce was assigned as the manager of the team in Norwalk on September 17, 2001, LaCroce made it clear to the entire team that he was going to be a tough manager. (LaCroce Dep. at 61.)[3]

---

[2] A salesperson's success at "prospecting" was demonstrated through the amount of potential dollars in that salesperson's "funnel." AT&T used the "funnel" to assist salespeople in identifying qualified opportunities to make sales of telecommunications services and equipment. Although salespeople were not expected to succeed in selling every opportunity identified in their funnel, keeping track of the information in the funnel allowed AT&T to monitor the prospecting activity of its sales employees. (LaCroce Dep. at 19-20).

[3] Specifically, LaCroce testified at his deposition that on his first day as manager in Norwalk, September 17, 2001, the following occurred at his first meeting with the team in Norwalk:

Q. What do you recall about the team meeting you had with everybody together?
A. I went in there and threatened them all.
Q. Okay. What do you mean by that?
A. I went into the team meeting, told them the things we were going to do, told them we were going to have meetings at 8 o'clock and 5 o'clock, basically, told them that one of the things I wouldn't do is their job. They were responsible for their job. They were responsible for meeting their numbers, and if they couldn't do their job, I would replace every single one of them, because there was a lot of people in the marketplace. And everyone was horrified.
Q. How do you know that?
A. Because I saw the looks on their face.
Q. Was that intentional on your part?
A. Sure.

(LaCroce Dep. at 61.)

The following chart summarizes the sales performance and the funnel activity of the Plaintiff and John Cibulay from June 2001, when the Plaintiff started, and January 2002. The dark line in the middle of the chart marks the point at which Joe LaCroce became the manager in Norwalk. There is a notable difference in performance between Cibulay and the Plaintiff once LaCroce takes over as manager:

| Month | Plaintiff- Peter Coccaro | | John Cibulay | |
| --- | --- | --- | --- | --- |
| | Sales (percent of monthly quota) | Funnel (dollar amount) | Sales (percent of monthly quota) | Funnel (dollar amount) |
| June 2001 | 0 | 0 | 0 | 0 |
| July 2001 | 0 | 0 | 0 | $30,450 |
| August 2001 | 0 | 0 | 0 | $27,450 |
| September 2001 | 0 | $34,700 | 0 | $8,050 |
| October 2001 | 0 | $31,700 | 33% | $274,351 |
| November 2001 | 0 | $18,530 | 28% | $261,151 |
| December 2001 | 0 | $17,770 | 15% | $210,437 |
| January 2002 | n/a | n/a | 95% | $186,042 |

The Plaintiff claims that Cibulay was allowed to "slide" for more than six months before he was disciplined, but Plaintiff fails to acknowledge that Cibulay immediately began performing once LaCroce started, significantly increasing the size of his funnel, and successfully closing sales. (LaCroce Dep. at 122; chart, supra; and Exhibit A.) Meanwhile, the Plaintiff maintained a paltry funnel and never closed a sale during the same time frame. (See chart and Exhibit A.) This difference in performance accounts for the difference in treatment by LaCroce: consistent with his message to the entire team on September 17, 2001, sales success meant continued employment and failure to make sales resulted in Performance Improvement Plans and ultimately, termination. (LaCroce Dep. at 61.)

Accordingly, because the Plaintiff cannot establish that he and John Cibulay were actually "similarly situated," he cannot sustain his burden to establish a prima facie case based on the difference in treatment between him and John Cibulay. Therefore, summary judgment is appropriate.

**B.  The "Dispute" Over Whether the Plaintiff Was Assigned a Module is Merely a Semantic One, and Does Not Create a Dispute of Material Fact Warranting Denial of Defendant's Motion**

The Plaintiff makes much ado about the fact that he was allegedly "babysitting" the accounts—the module—of another employee while that employee was on extended medical leave. (Opp. Memo at 16-18.) Defendant has consistently asserted that the Plaintiff was officially responsible for this module, but the Plaintiff claims that there was no official assignment. This dispute is one of semantics. The Plaintiff himself concedes that he treated the employee's module as his own, primarily by using the module to attempt to make sales. (Coccaro Dep. at 126-127.) Further, the plaintiff admits that Trinque gave the plaintiff's telephone number to her contacts and notified them that the plaintiff would be "fully in for her." (Coccaro Dep. at 81.) Additionally, the plaintiff acknowledges that LaCroce said that he would transfer Trinque's module to the plaintiff. (Coccaro Dep. at 238.) Finally, in an October 23, 2001 e-mail sent to the plaintiff, LaCroce referenced the plaintiff having "taken over Virginia's module." (Coccaro Dep. Exh. 5.)

Plaintiff did not have any greater responsibility to manage this module than other employees who were managing their own modules. (Coccaro Dep. at 248-49). His suggestion that he could not focus on creating new sales opportunities because of his responsibility for "babysitting" this module ignores the fact that the major source of sales production for his peers in Norwalk was the accounts in the modules they were working with and for which they were

responsible. Simply because the Plaintiff was <u>unsuccessful</u> in selling to the customers in his module—a fact not in dispute—does not mean he was somehow not assigned to them. Significantly, the Plaintiff has not and cannot point to any material difference in how he treated the module he claims he was "babysitting" and how other AT&T employees treated their own modules. Accordingly, this alleged dispute pointed to by the plaintiff is a distinction without a difference, and it does not create a disputed issue of material fact worthy of withstanding summary judgment.

### C. The Plaintiff's Assertion That He Was Replaced By a Younger Employee Does Not Constitute Reason to Deny Summary Judgment

Even if this court concludes that AT&T employee Hugh Sullivan "replaced" the Plaintiff in the Defendant's Norwalk office, there is no evidence indicating that AT&T replaced the plaintiff with Sullivan *because of his age*. The Plaintiff suggests that the mere fact that his alleged replacement was younger meets his burden to establish a prima facie case of discrimination. (Opp. Memo at 14-15.) While, if true, such a replacement could form the basis of the prima facie case of age discrimination, the Plaintiff still fails to demonstrate, as he must, that AT&T's reason for terminating the Plaintiff—his inability to make any sales—is a pretext for discrimination. See Soderberg v. Gunther Int'l, Ltd., No. 3:02cv2010, 2004 U.S. Dist. LEXIS 292 (D. Conn., Jan. 5, 2004) (noting that plaintiff could not prove pretext in part because there was "no evidence that Defendant considered age when deciding to…eventually hire [plaintiff's] replacement.");[4] Strohmeyer v. International Brotherhood of Painters & Allied Trades, 989 F. Supp. 455, 460 (W.D.N.Y. 1997) (stating that "[r]eplacement by a younger individual…does not, standing alone, indicate that defendant's proffered reasons for terminating plaintiff are pretextual").

---

[4] A copy of this unpublished opinion is attached as Exhibit B.

The burden the Plaintiff has under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), is to set forth a prima facie case and then respond to the defendant's articulation of a legitimate, nondiscriminatory reason for the adverse employment action at issue. At all times, the ultimate burden of persuading the fact finder that discriminatory animus motivated the employment decisions at issue remains with the plaintiff. As the Second Circuited noted in Norton v. Sam's Club, 145 F.3d 114, 118-19 (2d Cir. 1998), there is a "simple principle that lies at the core of anti-discrimination cases. . . . [T]he plaintiff has the ultimate burden of persuasion." Id. Here, with respect to Hugh Sullivan, the Plaintiff offers simply a blanket assertion that he was allegedly replaced by a younger employee. The Plaintiff further asserts that this "replacement" stops the court's inquiry and prohibits granting of summary judgment. This is not the case. Plaintiff has failed to meet his burden and therefore, summary judgment is appropriate.

### D.    The Plaintiff's Assertion That the Stolt Neilsen Account Would Have Allowed Him to Improve His Sales Performance Is Utterly Speculative

The final assertion the Plaintiff makes in his brief is that he was *prevented* from meeting his quota because he was not allowed to contact the Stolt Neilsen account. (Opp. Memo at 20-23.) Even if it is true that the Plaintiff was not permitted to contact this account—because, as the Plaintiff acknowledges, the account was not part of the territory to which the Plaintiff was assigned—the Plaintiff relies on pure speculation in asserting that his involvement in this account would have improved his sales performance and forestalled his termination. Such speculation cannot defeat a summary judgment motion. See Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001). Plaintiff was admittedly unable to sell to the accounts that he was responsible for prospecting—there was no guarantee that he would be able to sell to this one account or that it would make a substantial difference in his sales performance.

Moreover, Plaintiff offers no evidence that the *reason* he was allegedly not allowed to contact this customer was because of his age. As LaCroce testified, internal AT&T policies and territory assignments would have impacted the Plaintiff's ability to contact that account. (LaCroce Dep. at 146-50.) Plaintiff does not dispute these assertions by LaCroce, but instead conclusively asserts that there must have been an invidious reason for AT&T to have kept him from contacting the account. Such conclusory assertions cannot defeat summary judgment as a matter of law, nor should they prevent entry of summary judgment here. See Fujitsu, 247 F.3d at 428.

**CONCLUSION**

Although the Plaintiff's Opposition attempts to raise a flurry of allegedly material facts in dispute, the key issues central to this case remain undisputed and warrant entry of summary judgment. First, the Plaintiff's poor performance as a salesperson was well-documented and is undisputed. Second, the comparator to whom the Plaintiff points is not actually similarly situated to the Plaintiff because he significantly outperformed the Plaintiff once the new manager came on board. Third, the "dispute" regarding the module is a semantic one that is not borne out by the facts and the Plaintiff's own testimony regarding how he treated those accounts. And finally, the other factual disputes raised by the Plaintiff are either not material, not disputed, or are speculative and unsupportive of the Plaintiff's claims. Accordingly, summary judgment is appropriate and should be granted.

DEFENDANT, AT&T CORPORATION

By_____
Victoria Woodin Chavey (ct14242)
Stacy Smith Walsh (ct25252)
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)
*vwchavey@dbh.com, sswalsh@dbh.com*
Its Attorneys

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed this date via first-class mail to: Robert A. Richardson, Esq., Garrison, Levin-Epstein, Chimes & Richardson, 405 Orange Street, New Haven, CT 06511.

_____
Stacy Smith Walsh